IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **CANDICE PASCHAL and PEDRO ZARAZUA JR.**, individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)<br><br>*Plaintiffs,*<br><br>v.<br><br>**PERRY'S RESTAURANTS LTD** d/b/a Perry's Steakhouse and Grille; and **CHRISTOPHER V. PERRY**, individually<br><br>*Defendants.* | No.  1:22-cv-00027-RP<br><br>PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE |

## I.   INTRODUCTION

Plaintiffs, Candice Paschal ("Paschal") and Pedro Zarazua Jr. ("Zarazua"), and Opt-in Plaintiffs[1] ("Collective Members") work or worked for Perry's Restaurants Ltd. d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually (collectively, "Defendants" or "Perry's") as servers at one or more of the Perry's Steakhouse and Grille locations in Texas.

Plaintiffs and Collective Members were all paid a direct subminimum hourly wage of less than $7.25 per hour and, in violation of the Fair Labor Standards Act ("FLSA"), were illegally (1) required to contribute a portion of their tips to a tip pool that was not fully distributed solely among customarily and regularly tipped employees; (2) required to perform non-tipped work unrelated to

---

[1] In addition to Plaintiffs, Paschal and Zarazua, there are four (4) Opt-in Plaintiffs who filed their consent to join this action prior filing this Motion for Court-Authorized Notice. *See Notice of Filing Consents*, [Doc. 16] (Opt-in Plaintiff, Sara Williams); *Notice of Filing Consent*, [Doc. 26] (Opt-in Plaintiff, Ellie Kunard); *Notice of Filing Consent*, [Doc. 30] (Opt-in Plaintiff, Adrienne Parks); *Notice of Filing Consent*, [Doc. 26] (Opt-in Plaintiff, Brandi Francis).

1

their tipped occupation (i.e., "dual jobs") before, during, and at the end of their shifts at a rate of $2.13 per hour; (3) required to perform non-tipped work that exceeded twenty percent (20%) of their time worked during each workweek at a rate of $2.13 per hour; and (4) required to pay for mandatory uniforms and other non-203(m) items.

This action challenges Perry's company-wide policy that utilizes hundreds of servers to perform both tipped work and non-tipped job duties at a rate of $2.13 per hour across all Perry's Steakhouse and Grille locations in Texas. Perry's practice of paying all its servers $2.13 per hour for the time spent performing non-tipped work (before, during, and the end of each shift) violates the FLSA's minimum wage provisions. Perry's also requires all its servers to pay for mandatory uniforms and other non-203(m) items, including crumbers, pepper mills, pepper mill holsters, ink pens, aprons, and check presenters. *See Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *9 (5th Cir. Mar. 18, 2022) (finding a "deduction violates § 203(m) unless the "facilities" it covers counts as a "wage." . . . The cost of uniforms and their laundering is primarily for the benefit of the employer and is thus unreasonable.")(citing 29 C.F.R. § 531.3(d)(2)(iii)).

In addition, Perry's pays all servers the same subminimum hourly wage of $2.13 per hour plus tips—pursuant to the FLSA's tip credit provisions. As such, Perry's relies on tips generated from customers to supplement its servers' subminimum hourly rate to bring their effective rate of pay up to the required minimum wage of $7.25 per hour. However, in violation of the FLSA's tips credit provision, an affirmative defense[2] to the payment of the full minimum wage, Perry's

---

[2] "The employer bears the burden to prove it is entitled to the tip credit." *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *5-7 (5th Cir. Mar. 18, 2022) (citing Montano v. Montrose Rest. Assocs., Inc., 800 F.3d 186, 189 (5th Cir. 2015)).

required all servers to contribute the same percentage, (4.5%) of each servers' total sales in tips to a mandatory tip at the end of each shift, that was not fully distributed solely among customarily and regularly tipped employees. *See Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015) (citing *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (holding that a restaurant "had the burden to prove it operated a legal tip pool"))(citations omitted).

As a result of these company-wide policies that Perry's implemented and applied on all servers, Perry's is barred from utilizing the affirmative defense commonly referred to as the tip credit under 29 U.S.C. § 203(m) and cannot supplement the servers' wages with customer tips. Plaintiffs and the potential opt-in plaintiffs are therefore owed wages for their unpaid minimum hourly wage and misappropriated tips resulting from the same unlawful policies—forced sharing of tips with nontipped employees, non-tipped job duties and excessive side work at $2.13 per hour, and deductions for mandatory uniforms—in violation of the FLSA.

Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek to certify and send court-authorized notice to the proposed collective of similarly situated employees ("Collective Members") defined as:

> **All individuals who worked as servers for Defendants in Texas at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage.[3]**

Under the *Swales* approach, here, notice to other potential opt-in plaintiffs of this collective action is appropriate because the pleadings and preliminary evidence shows that Plaintiffs are similarly situated to the proposed collective of employees they seek to notify of this action. Specifically, Plaintiffs have shown that all servers are subject to the same job requirements, job

---

[3] *See Collective Action Compl.*, [Doc. 1 at pp. 13-14 ¶ 47]; *see also Court Order*, [Doc. 48 at p. 6].

duties, and paid in the same manner—pursuant to the tip credit—and therefore are all similarly situated regarding Perry's compensation and employment policies at issue in this lawsuit.

As discussed below, Plaintiffs have met their burden by showing they and the proposed collective are "sufficiently similarly situated such that this case should proceed on a collective basis[]" and therefore, entitled to receive notice of their right to join this action pursuant to Section 216(b) of the FLSA. *See, e.g.*, *Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2021 U.S. Dist. LEXIS 101258, at *15 (W.D. Tex. May 28, 2021)(citations omitted).

## II. LEGAL STANDARD

Section 216(b) of the FLSA "permits employees to bring an FLSA action against their employer on 'behalf of himself or themselves and other employees similarly situated.'" *Segovia*, 2021 U.S. Dist. LEXIS 101258, at *15 "Unlike class actions [] under Fed. R. Civ. P. 23, which require plaintiffs to 'opt-out' of the class, an FLSA collective action requires plaintiffs to 'opt-in' to become part of the class." *Id.*, at *15 (citations omitted). "To keep the opt-in process efficient, district courts 'have discretion' to 'facilitat[e] notice to potential plaintiffs.'" *T.S. v. Burke Found*, 521 F. Supp. 3d 691, 695 (W.D. Tex. 2021) (citing *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). As the district court noted in *Sperling v. Hoffmann-La Roche, Inc.*, "[i]f courts refrain from facilitating notice to missing class members, the enforcement of ADEA remedies for violations which victimize a group of people will be limited only to those victims who are already known to their 'champion,' [] or who are fortunate enough to hear and heed 'the vagaries of rumor and gossip,' [] or who are courageous enough to recognize the wrong done them and sue on their own." 118 F.R.D. 392, 403 (D.N.J. 1988) (citations omitted).

To determine whether a proposed collective is similarly situated, "[c]ourts consider three factors. . .(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." *Court Order*, [Doc. 48 at p. 4] (citing *Torres v. Chambers Protective Servs., Inc.*, No. 5:20-CV-212, 2021 WL 3419705, at *3 (N.D. Tex. Aug. 5, 2021)); *see also Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092-MAC, 2022 U.S. Dist. LEXIS 160236, at *9 (E.D. Tex. Aug. 9, 2022) (same) (citation omitted).

The term "similarly situated," as required for collective actions under Section 216(b), does not mean "identically situated." *Court Order*, [Doc. 48 at p. 4] (citation omitted); *see also Torres v. Chambers Protective Servs.*, 2021 U.S. Dist. LEXIS 146586, at *10 (citing *Segovia v. Fuelco Energy LLC*, 2021 U.S. Dist. LEXIS 101258, at *22-23 (stating that "[f]rom the statutory text, 'similarly situated,'" requirement for an FLSA collective action, "clearly differs from 'identically situated.'" And "'courts are adamant' that plaintiffs need not establish identical situations to carry their burden to show 'similarly situated.'") (citation omitted)). Indeed, "[d]istrict courts in the Fifth Circuit have repeatedly stated that plaintiffs need only be similarly situated, not identically situated." *Espinosa v. Stevens Tanker Div., LLC*, Civil Action No. SA-15- CV-879-XR, 2017 U.S. Dist. LEXIS 64188, at *9 (W.D. Tex. 2017) (emphasis original); *see also Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226–27 (5th Cir. 2011) (noting that, "[i]f one zooms in close enough on anything, differences will abound; . . . [b]ut plaintiffs' claims need to be considered at a higher level of abstraction" (internal quotation omitted)).Therefore, as Judge Hightower stated, "the court must instead ask whether a plaintiff has 'demonstrated similarity among the individual situations.'" *Court Order*, [Doc. 48 at p. 4] (citation omitted).

Moreover, "when the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." *Segovia v. Fuelco Energy LLC*, 2021 U.S. Dist. LEXIS 101258, at *31-32 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016) (citation omitted)) (internal quotation marks omitted).

Here, there is no "fundamental divide" between the servers—all are employed as servers, paid $2.13 per hour, contribute tips to a mandatory tip pool, and perform side work at a rate of $2.13 per hour, regardless of the type of side work and amount of time spent performing side work. Unlike the plaintiffs in *Swales* and *In re JP Morgan*, here, the similarly situated determination does not involve "potentially dispositive, threshold matters" that, if ignored until after notice is issued, would result in "alerting those who cannot ultimately participate in the collective [which] 'merely stirs up litigation,' [] [] what *Hoffmann-La Roche* flatly proscribes." *In re JPMorgan*, 916 F.3d at 502 (citing *Hoffmann-La Roche*, 493 U.S. at 174).

Indeed, the focus is not whether there has been an actual violation or whether Plaintiffs can meet their burden for summary judgment, but whether Plaintiffs and potential opt-in plaintiffs are similarly situated—such, that "facilitating notice is [] need[ed] for [the] 'efficient resolution in one proceeding of common issues' of law and fact arising from the same alleged discriminatory activity." *See In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) (citing *Hoffmann-La Roche*, 493 U.S. at 170, 172-173)); *see also Segovia*, 2021 U.S. Dist. LEXIS 101258, at *20 ("...similarly situated determination is not 'an opportunity for the court to assess the merits of [any] claim by deciding factual disputes or making credibility determinations....'")(internal brackets in original).

This is further exemplified under Fed. R. Civ. P. 23—a more rigorous standard for class certification that does not require the party seeking certification "to prove the merits of the class claim or even to establish a probability that the action will be successful." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Even under the more rigorous Rule 23 standard, here, the "common question [whether defendants' policies violate the tip credit provision of the FLSA] is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ("[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.").[4]

**A.    The pleadings and preliminary evidence, "show sufficient similarity between the plaintiffs' employment situations" to justify the issuance of court-authorized notice.**

To satisfy their burden, plaintiffs "must establish substantial allegations" that Plaintiffs and the proposed collective members "were together the victims of a single decision, policy, or plan infected by discrimination.'" *T.S. v. Burke Found.*, 521 F. Supp. 3d 691, 696 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8. The "plaintiffs may meet [their] burden by showing a factual nexus that binds the plaintiff[s] and the potential collective members as alleged victims of a particular policy or practice. . . .[here]—that is, [all] servers at Perry's Restaurants in Texas are 'similarly situated' with respect to their wages such that notice should issue under 29 U.S.C. §

---

[4] *See also Maynor v. Dow Chem. Co.,* No. G-07-0504, 2008 U.S. Dist. LEXIS 42488, at *1, 24-26 (S.D. Tex. 2008) (Some employees accepted DOL settlement payments and amounts owed to Plaintiff's deferred. The Court stated that these "arguments appear to relate to [] potential damages owed to each class member, not to whether the proposed class members are similarly situated with respect to the employment policy alleged to violate the FLSA[.]").

216(b)." *Court Order*, [Doc. 48 at pp. 4, 8] (citation omitted).

"In determining whether an FLSA plaintiff has met his or her burden, courts often look at 'whether potential plaintiffs were identified, . . . whether affidavits of potential plaintiffs were submitted, . . . and whether evidence of a widespread discriminatory plan was submitted.'" *T.S. v. Burke Found.*, 521 F. Supp. 3d 691, 696 (citation omitted). Here, like in *Sperling v. Hoffmann-La Roche, Inc.*, "[p]laintiffs have made detailed allegations in their pleadings, and have supported those allegations with affidavits. . . ." and "[p]laintiffs' allegations, as supported, describe a single decision, policy, or plan of defendant's, infected by a discriminatory aspect" which led to the misappropriation of tips and unpaid minimum wages of every member of the proposed class Plaintiffs seek to represent. *See* 118 F.R.D. 392, 406 (D.N.J. 1988) (based on plaintiffs pleadings and allegations supported by affidavits describing the "single decision, policy, or plan," the court held that "the record in this case on the 'similarly situated' issue is sufficiently developed at this time to allow court-facilitated class notice."), *aff'd in part and appeal dismissed in part*, 862 F.2d 439, *aff'd, Hoffmann-La Rouche, Inc.*, 493 U.S.165; *see also Segovia*, 2021 U.S. Dist. LEXIS 101258, at *28 (finding "similarities of [plaintiffs] factual and employment setting supports proceeding as a collective action" and noting that "'the question is not whether Plaintiffs all have the same exact work day,' but rather 'whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings.'") (citations omitted).

   1. **All servers are subject to the same compensation and employment policies across all locations in Texas that give rise to the allegations in this lawsuit.**

The essential determination presented is whether the putative class is "similarly situated" to the named plaintiffs. *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997). *Swales* directs district courts to identify what facts and legal considerations will be material to determining

whether a group of employees is "similarly situated." *Swales*, 985 F.3d at 440-443. In this case, the "similar" considerations are whether Defendants utilized the tip credit to pay all its servers, whether all Defendants' servers contributed tips to a tip pool, performed nontipped job duties, and were required to pay for non-203(m) items. Defendants' policy of paying less than minimum wage and denying tipped employees a substantial part of their tips are FLSA violations common among all Defendants' servers.

Here, Plaintiffs and the proposed collective share sufficient similar factual and employment settings, with each employee—servers across all locations in Texas—performing the same or similar work under the same terms, pay provisions, and policies or practices. In demonstrating similarity, Plaintiffs cite Defendants' requirements that servers pay for uniforms and other non-203(m) items, as well as the fact Defendants' servers all have identical job descriptions, pay scale, tip pooling arrangement, and performed nontipped job duties before, during, and after each shift.

Perry's employed Plaintiffs and many other individuals as servers—all subject to the same compensation and employment policies across all locations in Texas. *See* Ex. 1 at App. 001 (Paschal Decl. ¶4-5) (worked as a server at the "Dallas #18" and "Dallas #30"); Ex. 2 at App. 005 (Zarazua Decl. ¶2-3) (same); Ex. 3 at App. 005 (Kunard Decl. ¶2) (works as a server at the Perry's Steakhouse and Grille location in Frisco); Ex. 4 at App. 011 (Park Decl. ¶3) (worked as a server at the Perry's location in Grapevine, Texas); *see also* Ex. 5 at App. 015 (Helgason Decl. ¶2-4) (former as a server who worked at the Perry's Dallas, Frisco, and Grapevine locations in Texas; and was paid $2.13 plus tips and subject to the same tip pooling arrangement, side work policies, and uniform deductions); Ex. 6 at App. 020 (Crawford Decl. ¶2-4) (former server who worked at the Perry's Frisco and Grapevine locations in Texas; and was paid $2.13 plus tips and subject to the

9

same tip pooling arrangement, side work policies, and uniform deductions); Ex. 7 at App. 025 (Martinez, C. Decl. ¶2-3) (former server who worked at the Perry's Dallas, Grapevine, Austin "Doman Northside," and Austin "Downtown" locations in Texas; and was paid $2.13 plus tips and subject to the same tip pooling arrangement, side work policies, and uniform deductions); Ex. 17 at App. 258-273 (Employee Payroll Actions Sheets) (same $2.13 pay rate for servers across Perry's #18Dallas, #21Frisco, #24Grapevine, #12Memorial, #10Champions locations in Texas).[5]

Perry's compensates all servers in the same manner—paying them all a subminimum hourly wage of $2.13 and claiming a "tip credit" for a portion of the tips its servers earn to offset Perry's obligation to pay the minimum wage required under Section 216(b) of the FLSA, across all Texas locations. *See* Ex. 9 at App. 094 (Henderson, Corp Rep Depo 62:23-25) (Q. All servers employed by Perry's in Texas are paid 2.13, correct? A. Yes; plus tips.").[6]

All servers, including Plaintiffs and potential opt-in plaintiffs, are paid a subminimum hourly wage plus tips and are required to contribute a portion of their earned tips to a mandatory tip pool across all Texas locations. *See* Ex. 9 at App. 094 (Henderson, *Paschal v. PRL* Corp Rep Depo 63:1-9). Perry's also requires all servers to participate in a mandatory tip pooling arrangement that requires every server to contribute a portion their tips—fixed percentage (4.5%) of each server's food and alcohol sales during their shift—to a mandatory tip pool across all locations in

---

[5] *See also* Ex. 9 at App. 95 (Henderson, *Paschal v. PRL* Corp Rep Depo 67:4-6); Ex. 1 at App. 001 (Paschal Decl.¶3), Ex. 2 at App. 006 (Zarazua Jr. Decl. ¶2), Ex. 3 at App. 008 (Kunard Decl. ¶4), and Ex. 4 at App. 011-12 (Parks Decl. ¶5); Ex. 5 at App. 015 (Helgason Decl. ¶3), Ex. 6 at App. 020 (Crawford Decl. ¶3); Ex. 7 at App. 025 (Martinez, C. Decl. ¶3).

[6] *See also* Ex. 24 at Ap. 369-372 (Emails identifying the same tip share maintained and implemented by Perry's across all locations in Texas). The emails *attached as* Exhibit 24 were produced in the 7 individual cases filed in the Western District—and, Defendant has not produced any of the attachments identified in the emails. Notably, Defendant has not produced any emails or attachments in this case, *Paschal v. Perry's Restaurants Ltd*.

Texas. *See* Ex. 9 at App. 094 (Henderson, *Paschal v. PRL* Corp Rep Depo 63:1-18) (testifying that all servers are required to contribute 4.5% of their sales in tips to a tip pool).[7] Indeed, Christopher Perry (PRL's, Chief Executive Officer) and Richard Henderson (PRL, Chief Operating Officer) determined the fixed percentage (4.5%) of each server's food and alcohol sales in tips that all servers are required to contribute to a mandatory tip pool at the end of each shift across all locations in Texas. *See* Ex. 9 at App. 094 (Henderson, Corp Rep Depo 63:19-23) (further testifying that "[4.5% has] been our percentage for as long as I can remember").

However, Plaintiffs allege that, in violation of the FLSA's tip credit defense, Perry's does not fully distribute the pooled tips solely among customarily and regularly tipped employees. *See* Ex. 1 at App. 002 (Paschal Decl.¶7-8), Ex. 2 at App. 006 (Zarazua Jr. Decl. ¶6-7), Ex. 3 at App. 008 (Kunard Decl. ¶5), and Ex. 4 at App. 012 (Parks Decl. ¶6); Ex. 5 at App. 015-16 (Helgason Decl. ¶4-9), Ex. 6 at App. 020-21 (Crawford Decl. ¶4-11). Moreover, Plaintiffs allege that the tip pool was unlawful because it included, for example, bussers and food runners, even when they were not staffed for a shift, and that servers' tips were unlawfully distributed among employees who are not lawful tip pool recipients. *See* Ex. 1 at App. 002 (Paschal Decl.¶8-9), Ex. 2 at App. 006 (Zarazua Jr. Decl. ¶6-7), Ex. 3 at App. 008 (Kunard Decl. ¶5), and Ex. 4 at App. 012 (Parks Decl. ¶6); Ex. 5 at App. 015 (Helgason Decl. ¶4, 10), Ex. 6 at App. 020-21 (Crawford Decl. ¶5, 11); Ex. 7 at App. 028 (Martinez, C. Decl. ¶11-13).

---

[7] *See* Ex. 9 at App. 095 (Henderson, *Paschal v. PRL* Corp Rep Depo 66:23-67:3); Ex. 8 at App. 065 (Perry's Employee Handbook) ("The Company [Perry's] has set this tip share amount as to servers at the current rate of 4.5% of sales per shift."); Ex. 14 at App. 261-266 (Henderson, *Paschal v. PRL* Corp Rep Depo Ex. 3-5, Guide Regarding Perry's Tip Sharing and Tip Pooling Policy).

> **2. All servers are subject to the same employment policies—all required to pay for mandatory uniforms and perform the same job duties, including non-tipped job duties (i.e. side-work) at a rate of $2.13 per hour across all Texas Locations.**

All servers, regardless of the Perry's location, are subject to the same compensation and pay policies, job description, job duties, and side work policies that give rise to the allegations in this collective action, and therefore are similarly situated. *See* Ex. 8 at App. 030-77 (Perry's Employee Handbook); Ex. 22 at App. 335-354 (Server Development Guide); Ex. 23 at App. 355-354 (Server Training Assessments); Ex. 13 (Side Work Checklists); Ex. 20 (Email from Sarah Cotaya, Perry's Sr. Director of Training and Operations, stating that side wo4rk checklists "need to be universal across the Company");[8] Ex. 9 at App. 100 (Henderson, *Paschal v. PRL* Corp Rep Depo 89:6-23,[9] 93:21-94:2); Ex. 12 at App. 249 (Henderson, *Green v. PRL* Corp Rep Depo 59:3-7).

Indeed, Plaintiffs and the proposed collective are all paid a subminimum hourly wage of $2.13 to perform a number of non-tipped duties ("side work"), both related and unrelated to their tipped occupation as servers, including but not limited to resetting chairs and tables and cleaning tables; cleaning different areas of the restaurant and running food;[10] polishing glassware and silverware and cleaning steak trays; preparing bread for the oven and whipping butter to pipe into ramekins; and conducting inventory checks (*i.e.* counting plates, silverware, check presenters, and decanters), cutting lemons and limes, cleaning and washing dishes, preparing bread for the oven

---

[8] Perry's has not produced any email communications in this action. The emails *attached as* Exhibits 19 were produced in *Helgason v. Perry's*; and the emails *attached as* Exhibit 20 were produced and filed in support of Plaintiffs' Motion for Conditional Certification in *Green v. Perry's Restaurant Ltd.*, ECF 76-12. *See Green v. Perry's Rests. LTD*, No. 21-cv-0023-WJM-NRN, 2022 U.S. Dist. LEXIS 202548, at *2, 5-6 (D. Colo. Nov. 7, 2022) (applying *Thiessen* standard and certifying a collective of "individuals who worked as servers. . .at any of [Perry's] restaurants in Colorado, Alabama, North Carolina, or Florida. . .and who were paid a direct cash subminimum hourly wage.").

[9] *See also* Ex. 13 at App. 258-260 (Henderson, *Paschal v. PRL* Corp Rep Depo Ex. 8-10, Side Work Checklists).

[10] *See also* Ex. 11 at App. 212 (Zarazua Jr. Depo. 76:1-3) ("Most of the time it was servers helping food runners, if anything I actually got written up once for not running enough food.").

and whipping butter to pipe into ramekins in the kitchen or on the line) and other back-of-the-house tasks unrelated to the servers tipped occupation all at a subminimum hourly. *See* Ex. 11 at App. 189 (Zarazua Jr. Depo. 53:24-54:1) ("Q. . . .Were you ever requested to clean windows at the location? A. Yes.").[11]

Perry's also requires all severs, including Plaintiffs and potential opt-in plaintiffs to perform a number of non-tipped work *related* to their serving job, including but not limited to rolling silverware, wiping down tables, setting tables, busing tables, and other "side-work." *See* Ex. 1 at App. 001-2 (Paschal Decl.¶15-17); Ex. 2 at App. 006 (Zarazua Jr. Decl. ¶8-9), Ex. 3 at App. 009 (Kunard Decl. ¶6-7); Ex. 4 at App. 012 (Parks Decl. ¶8-9); Ex. 5 at App. 017 (Helgason Decl. ¶12-17), Ex. 6 at App. 022 (Crawford Decl. ¶17); Ex. 7 at App. 028 (Martinez, C. Decl. ¶11-13).

However, the time that Plaintiffs and potential opt-in plaintiffs spent performing these non-tipped duties, related to their tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek. *See* Ex. 1 at App. 001-002 (Paschal Decl.¶11-13), Ex. 2 at App. 006-007 (Zarazua Jr. Decl. ¶10-14); Ex. 3 at App. 009-010 (Kunard Decl. ¶8-9, 12); Ex. 4 at App. 012-013 (Parks Decl. ¶9, 12, 15-16); Ex. 5 at App. 017 (Helgason Decl. ¶12-17); Ex. 6 at App. 022-023 (Crawford Decl. ¶17-18). Yet, Plaintiff and potential opt-in plaintiffs were only paid sub-minimum wage of less than $7.25 to perform non-tipped work including, both, job duties related and unrelated to their work as servers. *See Id*; *See also* Ex. 13 (Side Work Checklists).

---

[11] *See also* Ex. 5 at App. 017 (Helgason Decl. ¶12-17, 19-21); Ex. 6 at App. 022-023 (Crawford Decl. ¶12-21); Ex. 19 at App. 259-267 (*Helgason v. PRL*, Emails re-non-tipped duties and side work); Ex. 18 at App. 258 (Perry's Employee Corrective Action Form – Server-Side Work, "Sara was told she has to do this sidework before can leave" and stating that "Sara will. . .complete the duties this job entails or she will no longer be employed with Perry's."). Sara Sharif is a former server that was dismissed after Plaintiffs' Motion for Notice was denied in *Helgason*. Thereafter, Sara Sharif filed the action styled *Sharif et al, v. Perry's Restaurants Ltd.*, No. 1:21-cv-01060-RP, currently pending before this Court.

Furthermore, Perry's subjected Plaintiffs and potential opt-in plaintiffs to the same unlawful deductions for mandatory uniform. *See* Ex. 15 at App. 267-238) (Helgason and Crawford, uniform deduction authorization forms and paychecks with uniform deductions); *see also* Ex. 16 at App. 00 (ADP Labor Distribution, Sample Re-Uniform Deductions for Servers at Perry's locations in Texas—#10 Champions, #12 Katy Freeway in Houston, Texas, #16 Cinco Ranch in Katy, Texas, #22 Bay Brook in Friendswood, Texas, and #24 Grapevine, and #28). Specifically, Plaintiffs and potential opt-in plaintiffs paid for mandatory uniforms and other business-related items, including ink pens, aprons, and check presenters. *See id.*; *see also* Ex. 11 at App. 164 (Zarazua Jr. Depo. 28:1-29:7) ("Q. Were you ever charged for having to replace an apron or any of these other items by Perry's? A. Yes. [] . . . . I was charged for all of these things [check presenters, pens, wine keys, uniforms, such as vests, [] shirts and aprons, pepper mills, and crumbers] that I would need to work."); Ex. 1 at App. 003-4(Paschal Decl. ¶ 20); Ex. 4 at App. 013-14 (Parks Decl.¶18-19).

As a result, all servers were subject to a common policy implemented by Perry's that illegally shifted their costs and business expenses onto their employees who were paid a subminimum hourly wage pursuant to the tip credit.[12] *see e.g.*, *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *22 (E.D. La. 2008) (finding that "DOL audit reports themselves reveal that there were several "similarly situated" employees of [Defendants]" and stating that "[o]ther courts have relied on DOL reports or audits as a grounds for certifying a collective action under §216(b) based on the "similarly situated" requirement.") (citation omitted).

---

[12] *See id; see also* Ex. 21 at App. 331-334 (DOL Investigation Excerpts); Ex. 5 at App. 019 (Helgason Decl. ¶22-23); Ex. 6 at App. 023 (Crawford Decl. ¶22-23).

Under the *Swales* standard, notice to other potential opt-in plaintiffs of this collective action is appropriate because the pleadings and preliminary evidence shows that Plaintiffs are similarly situated to the putative class of employees they seek to notify of this action. Specifically, Plaintiffs have sufficiently shown that all servers are subject to the same job requirements, job duties, and paid in the same manner—pursuant to the tip credit—and therefore all are similarly situated with regards to Defendants' policies and payment scheme at issue in this lawsuit. Therefore, Plaintiffs have met their burden under the *Swales* standard to justify the issuance of notice. .

### III.   PROPOSED NOTICE TO SIMILARLY SITUATED EMPLOYEES

"Federal judges have the power to authorize the sending of notice to potential FLSA class member to inform them of the action and to give them opportunity to participate by opting in. . . .[,]" after determining, at the onset of a case, that potential opt-in plaintiffs are similarly situated to plaintiffs. *See Tillis v. Glob. Fixture Servs.*, No. 4:19-CV-01059, 2020 U.S. Dist. LEXIS 49447, at *18 (S.D. Tex. Mar. 23, 2020) (citing *Hoffmann-La Roche Inc.*, 493 U.S. at 169-70). "Notice is particularly important for FLSA collective actions as potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff 'gives his [or her] consent in writing to become a party and such consent is filed in the court in which such action is brought.'" *Tillis*, 2020 U.S. Dist. LEXIS 49447, at *18 (citations omitted). Accordingly, notice to potential class members is necessary in making an informed decision about joining this action and preserving their claims for unpaid wages by tolling the statute limitations.[13]

---

[13] The limitations period is not tolled with respect to the other potential plaintiff's until he or she files a consent with the court opting-in. 29 U.S.C. § 256; *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008) (citing *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983) *Quintanilla v. A & R Demolitina, Inc.*, No. Civ. A. H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005) As a result, each day that goes by before other servers are provided with notice and file a consent to opt-in is one less day for which he or she may recover the wages owed by Defendant.

Plaintiffs therefore respectfully request this Court to certify the proposed collective of similarly situated employees and authorize Plaintiffs' counsel to send the notices *attached as* Exhibits 25 through 27 to this motion via the avenues requested below, to the collective defined as:

> **All individuals who worked as servers for Defendants in Texas at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage.[14]**

Plaintiffs respectfully request that Perry's be ordered to produce, within fourteen (14) days of granting this Motion, a list in a useable electronic (.xls) format of names, last known addresses, telephone numbers, e-mail addresses, and dates of employment for all members of the collective. *See e.g, Soto v. Marquez Constr. & Maint.*, No. MO:20-CV-00101-DC-RCG, 2021 U.S. Dist. LEXIS 171040, at *8 (W.D. Tex. Apr. 9, 2021) ("Defendants [ordered] within fourteen (14) days [of granting the motion] [to] provide Plaintiffs' counsel with the names, last known addresses, e-mail addresses, of the potential opt-in plaintiffs in a useable electronic format."); *Bancroft v. 217 Bourbon, LLC*, No. 21-545, 2021 U.S. Dist. LEXIS 250340, at *16 (E.D. La. Jan. 13, 2021) (ordering Defendants, within fourteen (14) days of the court's order, to provide "the names, last-known addresses, email addresses, and telephone numbers (including known cell phone numbers) of all putative collective action members"); *Parrish v. Premier Directional Drilling, L.P.*, SA- 16-CA-00417-DAE, 2016 U.S. Dist. LEXIS 186288 (W.D. Tex. Oct. 14, 2016).

Plaintiffs request to send the proposed Notice and Consent form (*attached as* Exhibit 25) by mail, and the proposed notice (*attached as* Exhibit 26) via email and text message to putative collective members. *See Cervantez v. TDT Consulting, LLC*, 2019 U.S. Dist. LEXIS 142907, at *34 (N.D. Tex. July 22, 2019) (granting plaintiffs' "request to distribute the Notice through mail,

---

[14] *See Collective Action Compl.*, [Doc. 1 at pp. 13-14 ¶ 47]; *see also Court Order*, [Doc. 48 at p. 6].

email, text message . . . ."); *Kibodeaux v. A&D Interests, Inc.*, 579 F. Supp. 3d 896, 911 (S.D. Tex. 2022) (permitting, and stating, that "mail, e-mail, and text-message notice will all help facilitate the FLSA's overarching goal of providing potential class members the opportunity to join the case and, therefore, will allow all three forms of notice"); *Green v. Perry's Rests. LTD*, 2022 U.S. Dist. LEXIS 202548, at *17-18 (authorizing Plaintiffs "to send the proposed Notice and Consent Form [] by mail and the proposed notice []via e-mail and text message to putative collective action members . . . ."). *See also Memorandum and Recommendation* at p. 2, *Loebsack v. Dufresne Spencer Grp., LLC*, Civil Action No. 4:21-cv-1884 (S.D. Tex. July 11, 2022), ECF 37 ("Because email and text message are common methods of modern communication, providing such contact information serves the purpose of informing potential class members of the lawsuit and providing them the opportunity to join the case.") (citation omitted); *Goss v. Tyler Traditions, Inc.*, No. 6:18-CV-423-JDK, 2019 U.S. Dist. LEXIS 175693, at *16-17 (E.D. Tex. July 22, 2019) ("[C]ourts have found there is high employee turnover in the restaurant industry, which counsels in favor of allowing text messages here.")

Plaintiffs request leave for their counsel to be permitted to maintain a website limited to posting the approved Notice and Consent Form (*see* Exhibit 25). *See Soto v. Marquez Constr. & Maint.*, 2021 U.S. Dist. LEXIS 171040, at *9 (permitting Plaintiffs' counsel to "send an email message that contains the Court-approved message and a link to a website containing electronic copies of the Court-approved Notice and Consent forms that can be electronically signed . . . and electronically returned to Plaintiffs' counsel . . . ."); *Black v. SettlePou, P.C.*, Civil Action No. 3:10-CV-1418-K, 2011 U.S. Dist. LEXIS 15493, at *16 (N.D. Tex. Feb. 14, 2011) (authorizing Plaintiffs' counsel "to maintain an internet website for the purpose of informing similarly situated persons of

their right to opt into this litigation."); *Green v. Perry's Rests. LTD*, 2022 U.S. Dist. LEXIS 202548, at *18 (authorizing Plaintiffs' counsel "to maintain a website limited to posting the approved Notice and Consent Form"). Plaintiffs also request that potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms.[15]

Plaintiffs request a ninety (90) day opt-in period from the initial date of transmitting the proposed notice and consent forms. *See Soto v. Marquez Constr. & Maint.*, 2021 U.S. Dist. LEXIS 171040, at *8 (permitting 90-day opt-in period); *Arceo v. Orta*, 296 F. Supp. 3d 818, 826 (N.D. Tex. 2017 (permitting ninety (90) day opt in period) (citations omitted). After the passage of thirty (30) days, Plaintiffs request permission to send a reminder notice (*attached as* Exhibit 27) to putative collective members who have not yet responded to the initial notice and consent form. *See Soto v. Marquez Constr. & Maint.*, 2021 U.S. Dist. LEXIS 171040, at *9 (permitting reminder notice via e-mail); *Bancroft v. 217 Bourbon, LLC*, 2021 U.S. Dist. LEXIS 250340, at *17 (permitting reminder notice via U.S. mail, email, and text message); *Contreras v. Land Restoration LLC,* 2017 WL 663560, *9 (W.D. Tex. 2017) (permitting reminder notices).

\* \* \*

Accordingly, for each of the foregoing reasons, Plaintiffs respectfully request this Court to certify this case pursuant to 29 U.S.C. § 216(b) and authorize notice to the Putative Collective Members via the methods set forth above. Finally, Plaintiffs request all such other relief to which they may be justly entitled.

---

[15] *See* 15 U.S.C. § 7001(a)(1); TEX. BUS. & COM. CODE § 322.007(a), (d); *see also Soto v. Marquez Constr. & Maint.*, 2021 U.S. Dist. LEXIS 171040, at *9; *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (permitting electronic signatures on consent forms) (collecting sources); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. Aug. 27, 2015 (permitting electronic signatures on consent forms)(collecting sources).

Respectfully submitted,

By: /s/ *Drew N. Herrmann*
    Drew N. Herrmann
    Texas Bar No. 24086523
    drew@herrmannlaw.com
    Pamela G. Herrmann
    Texas Bar No. 24104030
    pamela@herrmannlaw.com

    **HERRMANN LAW, PLLC**
    801 Cherry St., Suite 2365
    Fort Worth, TX 76102
    Phone: 817-479-9229
    Fax: 817-840-5102
    ATTORNEYS FOR PLAINTIFFS
    AND COLLECTIVE MEMBERS

CERTIFICATE OF SERVICE

I certify that on December 2, 2022 the above document will be filed via CM/ECF, which will cause a copy to be served on all counsel of record.

/s/ *Drew N. Herrmann*
Drew N. Herrmann