**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **CANDICE PASCHAL and PEDRO ZARAZUA JR., individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)**<br><br>*Plaintiffs,*<br><br>**v.**<br><br>**PERRY'S RESTAURANTS LTD d/b/a Perry's Steakhouse and Grille; and CHRISTOPHER V. PERRY, individually**<br><br>*Defendants.* | **No. 1:22-cv-00027-RP**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR NOTICE** |

Respectfully submitted,

By: _/s/ Drew N. Herrmann_

Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102
ATTORNEYS FOR PLAINTIFFS
AND OPT-IN PLAINTIFFS

1

**A.    Plaintiffs' sworn declarations are based on their personal knowledge and provide substantial allegations that they and the other servers are similarly situated.**

"[C]ourts have found that an employee can have personal knowledge of the employment conditions of other employees by virtue of their work experience." *Contreras v. Land Restoration LLC*, 2017 U.S. Dist. LEXIS 22842, at *9 (W.D. Tex. Feb. 17, 2017) (citation omitted); *see also Pacheco v. Aldeeb*, 2015 U.S. Dist. LEXIS 40944, 2015 WL 1509570, at *4 (W.D. Tex. Mar. 31, 2015) (quoting *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir.1999)(citations omitted)). Like *Green*, here, Plaintiffs' "declarations are based on their personal knowledge, obtained during employment with Perry's and discussions with other co-workers about Perry's policies." *Green v. Perry's Rests. LTD*, 2022 U.S. Dist. LEXIS 202548, at *8 (D. Colo. Nov. 7, 2022). Moreover, Plaintiffs' personal knowledge was obtained during their employment with Perry's and discussions with other co-workers. *See* Pls' Mot., [Doc. 50 at pp. 8-11]; Paschal Decl., [Doc. 51-1 pp. 1-4] (Dallas #18 and #30); Pl's Ex. 1 (Paschal Depo. 65:7-20);[1] Zarazua Decl., [Doc. 51-2 at pp. 1, 3] (Dallas #18 and #30) (personal knowledge obtained from "my own employment and conversations with other with coworkers. . . ." "[b]ased on my employment and working with other servers...") ; Kunard Decl., [Doc. 51-3 at pp. 1-3] (Frisco); Parks Decl., [Doc. 51-4 pp. 1-4] (Grapevine); Helgason Decl., [Doc. 51-5] (Dallas, Frisco, and Grapevine); Crawford Decl., [Doc. 51-6] (Frisco and Grapevine); Martinez Decl., [Doc. 51-7] (Dallas, Grapevine, Doman and Downtown Austin).[2]

**B.    Plaintiffs are similarly situated to the proposed collective and therefore notice to the proposed collective members is authorized by *Swales*.**

Under *Swales*, notice of a collective action may be "justified when the pleadings and only

---

[1]    Paschal's deposition was conducted on December 21, 2022—after Plaintiffs filed their Motion for Notice.

[2]    Defendant notes, "Martinez. . .worked at two Austin Perry's Location. . . .as a [server] trainer. . . and one shift [where] Martinez] filled in [as a server]." Def's Resp., [Doc. 57 at p. 8 n. 2]; *see also* Pls' Ex. 2 (Perrys Server Trainer Agreement-Martinez). Contrary to Defendant's argument [Doc. 57 at p. 12], Martinez has personal knowledge from working as a server trainer—training other servers at Perry's Texas locations in Austin. *See e.g.*, [Doc. 51-12 at 19] (*Green*, Henderson Corp Rep 72:4-73:7) (server trainers train other servers pursuant to policies created by Perry's).

preliminary discovery show sufficient similarity between the plaintiffs' employment situations." *Swales v. KLLM Transp. Servs., L.L.C.*, 2021 U.S. App. LEXIS 827, at *22 (5th Cir. 2021); *see also* Order, [Doc. 48 at p. 4] (preliminary discovery "must be limited to 'the material facts and legal conclusions necessary to determine whether a group of employees are similarly situated.'") (citations omitted)); Pls' Mot., [Doc. 50 at p. 5]. The burden for notice "does not require 'plaintiffs to present evidence that would be required to survive a motion for summary judgment.'" *Hines v. Ironclad Energy, LLC*, 2019 U.S. Dist. LEXIS 177633, at *4 (W.D. Tex. Aug. 23, 2019) (quoting *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010)); *see also Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

"'From the statutory text, 'similarly situated,' as required for. . .an FLSA collective action, clearly differs from 'identically situated[]'; thus, a plaintiff 'need not establish identical situations to carry [her] burden to show 'similarly situated.'" *Torres v. Chambers Protective Servs.*, 2021 U.S. Dist. LEXIS 146586, at *10 (N.D. Tex. Aug. 5, 2021) (citation omitted). Instead, all that is required is plaintiffs "must show a 'demonstrated similarity' among the purported c[ollective] members, as well as a 'factual nexus' that binds the c[ollective] members' as alleged victims of a particular policy or practice." Order, [Doc. 48 at p. 4]; *see also T.S. v. Burke Found.*, 521 F. Supp. 3d 691, 698 (W.D. Tex. 2021) (Pitman, J.) (potential opt-in plaintiffs do not have to be identical and minor differences will not preclude notice) (quoting *Barnett v. Countrywide Credit Indus., Inc.*, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) ("To establish that employees are similarly situated, a plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar.")).

Here, the evidence shows that Perry's uniformly imposes the same policies at issue on all

its servers—all are subject to the same compensation structure and unlawful policies in violation of the FLSA—regardless of location. *See Francis-Luster v. Kelley Law Firm, P.C.*, 2022 U.S. Dist. LEXIS 33300, at *7-8 (N.D. Tex. Feb. 10, 2022) ("When plaintiffs' claims are based on their employer's allegedly unlawful policy, the differences that are unrelated to the policy 'will not provide a basis for a court to find that the first factor weighs against a similarly situated finding.'")(quoting *Torres*, 2021 U.S. Dist. LEXIS 146586, at *18).

Notably, courts have found Perry's tipped employees or servers were similarly situated. *See Steele v. Leasing Enterprises, Ltd.*,[3] No. 4:09-cv-2789 (S.D. Tex. 2009) (Houston—conditionally certified two classes of tipped workers employed by Perry's); *Hoenninger v. Leasing Enterprise*, No. 1-14-cv-798-LY (W.D. Tex. 2014) (conditionally certified a nation-wide class of tipped servers who worked at Perry's) *Shaffer v. Perry's Rests., Ltd.*, 2017 U.S. Dist. LEXIS 225876, at *25 (W.D. Tex. Aug. 7, 2017) (San Antonio Lawsuit); *Shaffer v. Perry's Rests., Ltd.*, 2018 U.S. Dist. LEXIS 180543, at *4 (W.D. Tex. Oct. 22, 2018) (San Antonio—conditionally certified a sub-class of servers subject to Perry's side work policy); *see also Berger v. Perry's Steakhouse of Ill., LLC*, 2018 U.S. Dist. LEXIS 39751, at *14-15 (N.D. Ill. Mar. 12, 2018) (certifying a class of servers under Rule 23 and Section 261(b) concerning "[deduction] & Side Work Claims"); *Green v. Perry's Rests. Ltd*, 2022 U.S. Dist. LEXIS 202548, at *13-14 (finding "Plaintiffs have made 'substantial allegations that the putative class members [Perry's servers across multiple locations] were together the victims of a single decision, policy or plan. . . .").

1.    **Defendant enforces the same employment policies and procedures across all Texas locations that give rise to the allegations in this litigation.**

Defendant maintains a centralized Human Resources department located at Defendants'

---

[3]    Perry's Restaurants Ltd ("PRL") is "formerly known as Leasing Enterprises, Ltd.—[] the parent company for all Perry's Steakhouse and Grille Restaurants located in Texas, Illinois, Colorado and Alabama." *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 402 (N.D. Ill. 2019).

headquarters in Houston, Texas. *See* Pls' Resp to Mot. Transfer, [Doc. 8 at pp. 2, 7] ("PRL records and the PRL employees who created and implemented the policies at issue in this lawsuit are located in Houston. . . .") (citing Def's Mot. Transfer, *Green v. Perry's Rests. Ltd.*, [ECF No. 27 p. 10])); *Id.* at [Doc. 8 at p. 18] ("the nature of the [FLSA] claims in the Complaint as well as the putative class proposed by Plaintiffs establish. . .that the totality of events underlying Plaintiffs' [FLSA] claims [] alleged. . .stem from policies and practices originating from PRL's headquarters in Houston.") (citing Def's Mot. Transfer, *Green v. Perry's Rests Ltd.*, [ECF No. 27 p. 6])). Indeed, Defendants' own statements and documents, demonstrate that—

- payroll documents and information concerning tipped employees and compensation policies are sent from, sent to, and located at Defendants' HR department in Houston;
- paychecks and payroll records (i.e., tip share worksheet) identifying hours worked and tip pool recipients, are created and located at PRL's headquarters in Houston; and
- documents concerning server training and job duties—including, side work duties policies are created by Sarah Cotaya (PRL, Senior Director, Training & Operations Support) and located at Defendants' headquarters in Houston.

*See* Pls' Resp to Mot. Transfer, [Doc. 8 at p. 7 nn.5-7]. Defendant also promulgates and implements across all locations the same policies concerning servers' wages and tips. *See* [Doc. 51-9 at p. 19] (Henderson Corp Rep 71:1-72:18; 73:7) (testifying that "all servers, regardless of location" are provided the same tip sharing and tip pooling policy); [Doc. 51-12 at p. 17] (*Green*, Henderson Corp. Rep. 64:25-65:3; 65:8-16) (discussing tip share worksheet created by Perry's and used across all locations); [Doc. 51-12 at p. 19] (*Green*, Henderson Corp. Rep. 70:6-71:7) (side work checklist maintained and accessible from any Perry's restaurant on "Viewer" software); [Doc. 51-12 at pp. 19-20] (*Green*, Henderson Corp. Rep. 72:14-73:7) (servers trained pursuant to Perry's policies ).

Furthermore, the policies regarding tip sharing, tip pooling, nightly checkout, credit card tip procedures, tip reports implemented and used, and giving rise to the violations alleged in this action are created and enforced across all locations. *See* [Doc. 51-8] (Employee Handbook); [Doc.

51-22] (Server Development Guide); [Doc. 51-23] (Server Training); [Doc. 51-14] (Tip Credit and Tip Pooling Guide); Pls' Ex. 3, (Uniform Deduction Authorization Forms). Plaintiffs have provided "substantial allegations" that Plaintiffs and the proposed collective "were together the victims of a single decision, policy, or plan infected by discrimination.'" *T.S. v. Burke Found.,* 521 F. Supp. 3d at 696. Plaintiffs have met their burden by "showing a factual nexus that binds the plaintiff[s] and the potential collective members as alleged victims of a particular policy or practice. . . .that is, [all] servers at Perry's Restaurants in Texas are 'similarly situated' with respect to their wages such that notice should issue under 29 U.S.C. §216(b)." Order, [Doc. 48 at pp. 4, 8].

      **2.**     **There is no dispute that Plaintiffs and the proposed collective are subject to the same compensation and tip pooling policy across all Texas locations.**

"Similarity may be shown through employees' job duties, pay structure, and work policies and procedures." Order, [Doc. 40 at p. 4] (citation omitted). Here, Defendant pays all its servers in Texas an hourly wage of $2.13 per hour plus tips pursuant to the "tip credit" under the FLSA. *See* Pls' Mot., [Doc. 50 at p. 10]; *see also* [Doc. 51-9 at p. 17-18] (Henderson Corp Rep 62:23-25; 67:4-6) ("Q. All servers employed by Perry's in Texas are paid 2.13, correct? A. Yes; plus tips."); Def's Resp., [Doc. 57 at pp. 5, 9] ("Perry's compensates its servers. . .a direct cash wage [of] $2.13 per hour and rel[ies] on the tip credit. . . ."). Defendant also operates the same mandatory tip pooling arrangement across all locations in Texas, which requires every server to contribute a portion of their tips—(4.5%) of each server's food and alcohol sales during each shift. *See* Pls' Mot., [Doc. 50 at p. 10]; [Doc. 51-9 pp. 17-18] (Henderson Corp Rep 63:1-9; 66:25-67:3); [Doc. 51-10 at p. 6] (Gutierrez Corp Rep 21:8-18); Pls' Ex. 1, Paschal Depo. 61:15-17. However, the ultimate question before this Court will be whether Defendant fully distributed the tip pool solely among customarily and regularly tipped employees. *See* Pls' Mot., [Doc. 50 at pp. 10-11]; *see also* Def's

Resp., [Doc. 57 at p. 11] (tips pooled are shared with "co-workers. . .who [customers] are _not_ independently tip. . . .") (emphasis added)). To prevail on its tip credit defense, Defendant will ultimately be required to prove that it only used tips from the tip pool to pay employees who were "customarily and regularly tipped." *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (employer has "the burden to prove it operated a legal tip pool"); *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 189 (5th Cir. 2015) ("If an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit."). Here, Defendant does not point to any significant differences or individualized facts—and there are none—that would prevent this Court from determining whether Defendant complied with the tip credit on a collective basis. Cf. *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014), *aff'd*, 656 F. App'x 688 (5th Cir. 2016) ("These are legitimate differences, but [the employer] does not explain why they are material and preclude collective resolution of this case. FLSA liability does not turn on the geographic location of a workplace or on the identity of a direct supervisor."); *Torres*, 2021 U.S. Dist. LEXIS 146586, at *18 (granting notice where defendant provided "no evidence that it applied different pay or overtime-pay policies to any subsection of the potential opt-in plaintiffs").

Moreover, variations of issues that go to damages can be decided collectively. *See e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (variations in harm immaterial because class members' legal and remedial theories were identical); *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016) (holding that "[e]stimates [of average hours worked] may come from representative testimony, and the '[t]estimony of some employees concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not.'") (quoting *Beliz v. W.H. McLeod & Sons*

*Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985) (citations omitted)).

Similar to variations in the number of hours an employee works, variations in the *amount* of tips contributed to or distributed from the tip pool are issues related to damages and can be decided collectively. Cf. *Whitehead v. Hidden Tavern, Inc.*, 765 F. Supp. 2d 878, 882-83 (W.D. Tex. 2011) (where owner "worked as a bartender on Friday nights and participated in a tip pool with one of the plaintiffs for six months," the defendant restaurant was "disqualified from its ability to utilize the tip credit provision" for all hours worked by the servers); *Guillory v. PF&B Mgmt., LP*, 2013 U.S. Dist. LEXIS 39484, at *5 (S.D. Tex. Feb. 27, 2013) ("If an employer cannot show that the tip pool was distributed solely among customarily and regularly tipped employees, the employer cannot take a tip credit and must pay its employees the full minimum wage under the FLSA.").

3. **Plaintiffs and the proposed collective are similarly situated as to Defendant's side work policy that requires all servers to perform nontipped work at $2.13 per hour.**

Defendant does not dispute (and the evidence demonstrates) Plaintiffs and the other servers are subject to the same company-wide policy requiring servers to perform side work, including non-tipped work while being paid $2.13 per hour. *See* Pls' Mot., [Doc. 50 at pp. 12-13 n. 11];[4] [Doc. 51-9 at 24] (Henderson Corp Rep 93:23-94:2); [Doc. 51-22 p.11]; [Doc. 51-20] (Email from Cotaya, Perry's Sr. Director of Training, stating the side work checklists "need to be universal across the Company"); *see also* Pls' Ex 1, (Paschal Depo. 73:10-23; 74:1-4; 76:6-9; 77:4-17; 78:2-6; 83:14-21; 107:12-20; 108:9-10; 108:19-20). Instead, Defendant challenges the side work claims by arguing they are inherently individualized because the side work duties, work schedule, and location (i.e., main dining area or bar area) where servers performed their job duties varied [Doc. 57 at pp. 18-20]. However, this argument was previously raised by Perry's in a lawsuit

---

[4] *See also* Pls' Ex. 4 (Server Write Up re Side work - Austin Location).

involving similar claims and was rejected. *See Rendak v. Perry's Steakhouse of Ill., LLC*, 2020 U.S. Dist. LEXIS 182095, at *12-13 (disparities regarding time spent on side work did not compel decertification and noting it "already rejected Defendants' arguments that individualized shift lengths, changing responsibilities, and the speed at which any one server performed his duties preclude certification"); *Green*, 2022 U.S. Dist. LEXIS 202548, at *14 (rejecting arguments "that the side work claims are inherently individualized because duties, schedules, and locations where servers performed job duties varied"); *Nelson v. Firebirds of Overland Park, LLC*, 2018 U.S. Dist. LEXIS 101323, at *15 (D. Kan. June 18, 2018) (rejecting argument "that each server's experience varies from the next in terms of how much time he or she spent performing non-tip-producing activities such that 'individualized discovery' would render the class unmanageable").

Moreover, similar to a variation in the number of hours worked by an employee, which can be decided collectively, variations in the amount of time spent on sidework can also be decided collectively. *See e.g., Callaway v. Denone LLC*, 2019 U.S. Dist. LEXIS 106991, at *6 (N.D. Ohio June 26, 2019) (finding "[d]espite th[e] variability [of time spent performing sidework among the class], the Court finds that the certification is appropriate because courts regularly allow representative testimony about the number of hours worked in FLSA collective actions."); *Rendak v. Perry's Steakhouse of Ill., LLC*, 2020 U.S. Dist. LEXIS 182095, at *12-13 ("reject[ing Perry's] arguments that individualized shift lengths, changing responsibilities, and the speed at which any one server performed his duties preclude certification").

Despite Defendant's attempt to conflate the two standards for sidework, *see* [Doc. 57 at p. 17], an employer may not take a tip credit for *any* time a server spends performing *unrelated* tasks. *See, e.g., Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (11th Cir. 2021) ("An employer cannot take the tip credit for time an employee spent performing duties that were *unrelated* to the tipped

occupation.")(quoting *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 619-20 (9th Cir. 2018) (en banc); *see also* 29 C.F.R. § 531.56(e)). Indeed, this Court recently held, "[t]he 80/20 guidance remained in place largely undisturbed until 2018. That year, DOL rescinded the rule through new guidance. The rescission was 'met with near-universal rejection' in court. In 2020, DOL finalized a rule codifying the rescission, but that rule never went into effect. DOL withdrew the rule in 2021 and finalized a new rule effectively codifying the 80/20 guidance and adding new protections. [The] [DOL] issued a notice of proposed rulemaking on June 23, 2021. After making changes in response to comments from the restaurant industry and others, DOL issued a final rule (the 'Rule') on October 29, 2021. The Rule went into effect on December 28, 2021." *Rest. Law Ctr. v. United States DOL*, 2022 U.S. Dist. LEXIS 30368, at *4 (W.D. Tex. Feb. 22, 2022) (Pitman, J.).

### 4.    All servers are similarly situated with respect to Defendant's policy requiring servers to purchase mandatory uniforms, tools, and other items.

The evidence demonstrates that Defendant enforces the same policy requiring all servers to purchase mandatory uniforms and other items—items that are not board, lodging, or other facilities—in violation of the tip credit. *See* Pls' Mot., [Doc. 50 at p. 10-11, 14]; Pls' Ex. 1, (Paschal Depo. 70:10-19; 71:2-11; 71:19-20); Pls' Ex. 3, (Uniform Deduction Form). Contrary to Defendant's argument [Doc. 57 at p. 23], it makes no difference whether Defendant deducted these items from Plaintiffs and its servers' wages or whether the servers purchased items on their own. The result "cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment." *See Nail v. Shipp*, 2019 U.S. Dist. LEXIS 132072, at *18 (S.D. Ala. 2019); *Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1158 (N.D. Ala. 2018) (the FLSA "will not be met where the employee 'kicks-back' directly or indirectly to the employer.") (citing *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (11th Cir. 2011); 29 C.F.R.

§ 531.35)); *Ettorre v. Russos Westheimer, Inc.*, 2022 U.S. App. LEXIS 7295, at *9 (5th Cir. Mar. 18, 2022) (any deduction "violates § 203(m) unless the 'facilities' it covers counts as a 'wage.'").

Defendant does not dispute[5]—and the evidence shows—Defendant required all its servers to purchase uniforms, tools, and other items in violation of the tip credit. *See e.g., Steele v. Leasing Enters.*, 2010 WL 4027717 at *3, *aff'd*, 826 F.3d 237, 244-46 (5th Cir. 2016) (finding Perry's violated the tip credit by transferring operating costs to its tipped employees); *Ettorre v. N.Y. Pizzeria, Inc.*, 2021 U.S. Dist. LEXIS 80483, at *4 (S.D. Tex. Apr. 27, 2021) (employer divested of tip credit where a server paid for non-203(m) items), *aff'd* 2022 U.S. App. LEXIS 7295 (5th Cir. Mar. 18, 2022). Moreover, any variation among collective members with regard to deductions is an issue that goes to damages and can be decided collectively. *See Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 553 (W.D. Mo. 2017) ("individual inquiries into the amount that employees were required to pay to reimburse their restaurants will not bar certification of the proposed classes.") (citing *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (need "for some individualized determinations at the liability and damages stage does not defeat class certification"); *Vaquero v. Ashley Furniture Indus.*, Inc., 824 F.3d 1150, 1155 (9th Cir. 2016) ("[T]he need for individual damages calculations does not, alone, defeat class certification[.]")); cf. *Lopez v. Fun Eats & Drinks, LLC*, 2021 U.S. Dist. LEXIS 132407, at *9 (N.D. Tex. July 15, 2021) (finding defendant was divested of the tip credit regardless of the frequency or amount of the deductions).

Plaintiffs have met their burden of showing that a similarly situated group of potential plaintiffs exists, and that no threshold issues prevent the issuance of notice. Therefore, notice is warranted. *See T.S. v. Burke Found.*, 521 F. Supp. 3d at 698-99.

---

[5] Notably, less than six (6) months ago, "Perry's acknowledge[d] that Plaintiffs may ultimately be entitled to very limited relief as to this claim because Perry's on 3 or 4 occasions charged at least one of the Plaintiffs for replacement of a uniform or equipment." *Helgason v. Perry's Rest.*, Def's Summ. Mot. Resp [ECF No. 93 at 20].