# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **CANDICE PASCHAL and PEDRO ZARAZUA, JR., individually and on behalf of all others similarly situated,** | § § § | |
| *Plaintiffs* | § § | |
| **v.** | § § | **Civil Action No. 1:22-CV-00027-RP** |
| **PERRY'S RESTAURANTS, LTD. d/b/a PERRY'S STEAKHOUSE AND GRILLE and CHRISTOPHER V. PERRY, individually,** | § § § § § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiffs' Motion for Court-Authorized Notice, filed December 2, 2022 (Dkt. 50); Defendant's Response to Plaintiffs' Motion for Court-Authorized Notice, filed January 9, 2023 (Dkt. 57); and Plaintiffs' Reply in Support of Plaintiffs' Motion for Notice, filed January 23, 2023 (Dkt. 60). By Text Order entered January 13, 2023, the District Court referred the motion to this Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Court held a hearing on the motion on March 22, 2023.

# I.  Factual Background

This is one of eight cases[1] pending in the District Court against Perry's Restaurants and Christopher V. Perry (collectively, "Defendants") asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"). Defendant Perry's Restaurants, Ltd. is a Texas limited partnership which operates the Perry's Steakhouse and Grille restaurant chain in Texas and several other states. Complaint (Dkt. 1) ¶ 14. Named Plaintiffs Candice Paschal and Pedro Zarazua, Jr. worked as servers at the Perry's restaurant in downtown Dallas, Texas, from January 2020 through May 2021 and July 2017 through July 2021, respectively. *Id.* ¶¶ 25-26.

On January 11, 2022, Plaintiffs filed this Fair Labor Standards Act ("FLSA") suit against Defendants Perry's and Christopher Perry. Dkt. 1. Plaintiffs bring this collective action under 29 U.S.C. § 216(b), individually and as representatives "of all similarly situated former and current employees of Defendants." *Id.* ¶ 47.

Plaintiffs allege that "Defendants have a policy and practice of paying all their servers, including Plaintiffs and Collective Members, subminimum hourly wages under the tip credit provisions of the FLSA." *Id.* ¶ 7. The FLSA tip credit exception provides that employers may pay less than the general minimum wage to a "tipped employee." 29 U.S.C. § 203(m). Plaintiffs allege that Defendants do not qualify for tip credit because they did not allow Plaintiffs to retain all their tips and required Plaintiffs to contribute 4.5% of their tips to an illegal tip pool, incur and pay for business expenses, perform non-tipped work unrelated to their tipped occupation, and perform non-tipped work exceeding 20% of their time worked each workweek. Dkt. 1 ¶ 7. Plaintiffs also allege that the tip pool was unlawful because it included bussers and food runners, even if they

---

[1] 1:21-cv-01053; 1:21-cv-01054; 1:21-cv-01055; 1:21-cv-01056; 1:21-cv-01057; 1:21-cv-01058; 1:21-cv-01060; and this collective action complaint.

were not staffed for a shift, and that tips earmarked for bussers were not distributed to them. *Id.* ¶¶ 33-34. Plaintiffs seek monetary damages and attorneys' fees and costs.

The District Court granted the parties' Joint Request for Phases (Dkt. 15), allowing discovery to proceed in two phases. Dkt. 15. The parties had ninety days to conduct the first phase of discovery on whether there are other "similarly situated" individuals under 29 U.S.C. § 216(b). *Id.*

The Named Plaintiffs and potential opt-ins[2] now seek to certify this case as a collective action under the FLSA. Plaintiffs ask the Court to certify the following class and order that notice be sent to potential class members:

> All individuals who worked as servers for Defendants in Texas at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage.

Defendants oppose class certification and object to Plaintiffs' proposed notice.

## II.  Legal Standard

The FLSA permits one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under this provision, other similarly situated employees "do not become plaintiffs in the action unless and until they consent in writing." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008). "To keep the opt-in process efficient, district courts 'have discretion' to 'facilitat[e] notice to potential plaintiffs.'" *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Before *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), most district courts in the Fifth Circuit followed the two-step certification approach outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). In *Swales*, 985 F.3d at 441, the Fifth Circuit rejected the

---

[2] Twenty-one individuals filed consent forms to opt in to this action as of April 4, 2023.

two-step *Lusardi* approach incorporating conditional class certification and instructed courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" Courts then can either find Plaintiffs to be similarly situated based on "the pleadings and only preliminary discovery" and approve notice or order further discovery to determine whether notice is warranted. *Id.* at 441.

District courts continue to apply the factors identified in *Lusardi* to determine whether plaintiffs have met their burden to show that potential collective action members are "similarly situated." *Fuller v. Jumpstar Enters., LLC*, No. H-20-1027, 2021 WL 5771935, at *3 (S.D. Tex. Dec. 6, 2021) (collecting cases). These factors include: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Swales*, 985 F.3d at 437 (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

Plaintiffs bear the burden to make a preliminary showing that a similarly situated group of potential plaintiffs exists. *T.S. ex rel. P.O. v. Burke Found.*, 521 F. Supp. 3d 691, 696 (W.D. Tex. 2021). To do so, plaintiffs must show a "demonstrated similarity" among the purported class members and a "factual nexus" that binds the class members' claims. *Klick v. Cenikor Found.*, No. 4:19-cv-01583, 2022 WL 1028065, at *4 (S.D. Tex. Apr. 6, 2022) (citations omitted). The Court must "consider all of the available evidence" and may determine "threshold" merits issues if necessary. *Swales*, 985 F.3d at 441-42. The court may modify the proposed class definition if it is overly broad. *See Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931-32 (5th Cir. 2005) (recognizing court's power to "limit the scope" of proposed FLSA action).

### III.  FLSA Litigation against Perry's Restaurants

This is not the first court to take up allegations of FLSA violations against Perry's Restaurants. Defendants rely extensively on *Helgason v. Perry's Rests., Ltd.*, No. 3:20-cv-1573 (N.D. Tex. June 12, 2020), in which Plaintiffs' counsel brought substantially similar claims on behalf of two former Perry's servers. The Northern District of Texas denied the plaintiffs' motion to certify a collective action, finding they did not meet their burden to show that all Perry's servers in Texas were similarly situated. *Id.*, 2021 WL 9145369, at *4 (N.D. Tex. Nov. 10, 2021).

Plaintiffs rely on other FLSA actions against Perry's Restaurants in which class certification was granted, but many of these cases were decided at the conditional certification stage. *See, e.g.*, *Green v. Perry's Rests. Ltd*, No. 21-CV-0023-WJM-NRN, 2022 WL 16744795, at *5 (D. Colo. Nov. 7, 2022) (conditionally certifying class of servers at multiple locations as to tip pool, side work, and uniform deduction policies); *Shaffer v. Perry's Rests., Ltd.*, No. SA-16-CA-01193-FB, 2017 WL 10841217, at *5 (W.D. Tex. Aug. 7, 2017) (conditionally certifying class of servers nationwide except in Colorado as to tip-fee policy but not unlawful tip pool arrangement). Plaintiffs also cite *Berger v. Perry's Steakhouse of Ill., LLC*, No. 14 C 8543, 2020 WL 5848374, at *5 (N.D. Ill. Oct. 1, 2020), discussed further *infra*, in which the court denied a motion to decertify a class of servers at a single Perry's Restaurant as to their side work claim.

The Court has considered the cases cited by the parties but is not bound by decisions in other cases and make these recommendations based on the record before it.

### IV.  Analysis

Plaintiffs seek class certification for three claims: Defendants (1) operated an unlawful tip pool, (2) required servers to perform "unrelated" side work and substantial amounts of "related" side work at the tipped rate, and (3) deducted the cost of uniforms and equipment from servers' pay.

5

Plaintiffs argue that they have shown the proposed class is similarly situated as to compensation and relevant employment policies because all servers are subject to the same job requirements and duties and are paid in the same manner. They argue that common legal considerations will be "whether Defendants utilized the tip credit to pay all its servers, whether all Defendants' servers contributed tips to a tip pool, performed nontipped job duties, and were required to pay for non-203(m) items." Dkt. 50 at 9. Defendants respond that class certification should be denied because Plaintiffs have not shown they were subject to a common policy and resolution of Plaintiffs' claims will require highly individualized inquiries.

## A.  Tip Pool

Plaintiffs argue that the tip pool was unlawful because it included employees who were not "customarily and regularly tipped," such as bussers and food runners, and tip pool funds were distributed to employees that were not staffed for a particular shift. Defendants admit that "Perry's distributed tip pool funds from a weekly tip pool to employees who had worked as bussers and food runners," as well as bartenders and hosts, but argue that these employees are eligible tip pool recipients and weekly distribution is proper. Dkt. 57 at 15.

Defendants' arguments are not appropriate for a motion for class certification. Courts must reach the merits only when they are intertwined with threshold issues of class certification. *Swales*, 985 F.3d at 441; *see also Cortez v. Casa do Brasil, LLC*, --- F. Supp. 3d ----, No. 4:21-CV-03991, 2022 WL 17811963, at *3 (S.D. Tex. Dec. 19, 2022) (explaining that a court must reach a "merits issue" only if it is a "dispositive, threshold matter"); *Collins v. Pel-State Bulk Plant, LLC*, No. 20-CV-00083, 2021 WL 5234968, at *4 (W.D. Tex. Sept. 29, 2021) ("But the notice stage is not the equivalent of the dispositive motions stage and thus is not the proper time to adjudicate the lawfulness of Defendants' policy."). The lawfulness of Defendants' policies is not a basis for denying class certification.

Next, Defendants argue that class certification is improper because determining whether ineligible employees participated in the tip pool requires individualized inquiries. Defendants contend individualized inquiries are necessary because a tip pool recipient's eligibility depends on whether the employee is one who "customarily and regularly receives tips," which is "determined on the basis of his or her activities, not on the employee's job title." Dkt. 57 at 15 (quoting *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 191 (5th Cir. 2015)).

The Court finds that the necessary inquiry does not prohibit collective resolution. First, when a defendant asserts the same defense against each plaintiff, collective treatment is "less problematic," even though the defense may require specific factual inquiries into each plaintiff. *Segovia v. FuelCo Energy LLC*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *10 (W.D. Tex. May 28, 2021) (quoting *Snively v. Peak Pressure Control*, LLC, 314 F. Supp. 3d 734, 742 (W.D. Tex. 2018)). Defendants contend that only eligible employees participated in the tip pool and the distribution of funds was lawful. These defenses would apply to any plaintiff.

As to the necessary inquiry, Defendants point to no evidence of individualized differences in the busser and food runner positions that would prohibit determining whether these employees, as a group, "customarily and regularly received tips" and thus are valid tip pool participants. *See Cortez*, 2022 WL 17811963, at *6 (granting class certification of tip pool claim alleging that customer service representatives improperly participated in tip pool); *see also Torres v. Chambers Prot. Servs., Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *7 (N.D. Tex. Aug. 5, 2021) (holding that economic-realities test, a multi-factor inquiry, could be applied on collective basis to supervisors and non-supervisors, allowing collective resolution of potential defense). For these reasons, the Court recommends that the District Court certify Plaintiffs' claims that Defendants

included ineligible employees in the tip pool and distributed tip pool funds to employees who were not staffed for a particular shift.

As stated, Defendants do not dispute that tip pool funds were not distributed on a shift-by-shift basis. Plaintiffs also claim that Defendants "retained portions of Plaintiffs' and Collective Members' tips." Dkt. 1 ¶ 34. The Court finds that Plaintiffs have not shown such a policy. At this stage, Plaintiffs must provide evidence that they were subject to a common policy. When asked about this claim at her deposition, Paschal testified that she was "not aware of where all [the tip pool funds] went," and confirmed that the allegation that servers had to share tips with "vacant positions" referred to employees who were not staffed for a particular shift. Paschal Tr. at 61:4-17, 69:6-19, Dkt. 61-1. Nor do the servers' declarations provide any specific facts to support this claim. Because Plaintiffs offer no evidence that Defendants retained or otherwise failed to distribute tip pool funds, they have not established such a policy, and the Court recommends against permitting Plaintiffs to pursue this claim collectively.

## B. Side Work

Next, Plaintiffs argue that the putative class is similarly situated as to Perry's "side work" policy. Plaintiffs allege that Perry's requires its servers to spend more than twenty percent of their time performing side work related to their tipped work, but compensates them for this work at the tipped hourly rate. Plaintiffs also allege that Perry's requires servers to perform side work unrelated to their tipped work at the tipped hourly rate. Defendants respond that no server has spent longer than 30 minutes performing related side work and servers are not asked to perform unrelated side work. Defendants argue that the Court should deny class certification because resolution of Plaintiffs' side work claims require individualized inquiries into each servers' experience, including whether a particular server worked an opening or closing shift, was assigned to the bar

or main dining area, performed related or unrelated side work, and spent more than twenty percent of their time on related side work.

Under the FLSA, an employer may rely on the tip credit exception for a tipped employee who spends a portion of time performing work that directly supports tip-producing work, but is not itself tip-producing. 29 C.F.R. § 531.56(f). The time spent on the supporting work must not exceed twenty percent of the employee's work.[3] *Id.* A server's directly supporting work includes "dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables." *Id.* An employer may not rely on the tip credit exception for work that does not directly support the tip-producing work. *Id.*

Plaintiffs support their claim as to Perry's side work policy with documentary evidence, deposition testimony, and declarations. Plaintiffs submit declarations from seven servers who worked at Perry's locations in Frisco, Dallas, Grapevine, and Austin, Texas.[4] The servers provide similar accounts of the side work tasks they were asked to perform, and all aver that they spent more than 20 percent of their time during each workweek performing non-tipped work. Dkt. 51-1 (Paschal Dec.) ¶¶ 11-12 (stating that she spent one to two hours during each work shift performing side work and more than twenty percent of her time performing non-tipped work); Dkt. 51-2 (Zarazua Dec.) ¶¶ 13-14 (same); Dkt. 51-3 (Kunard Dec.) ¶ 8 (same); Dkt. 51-4 (Parks Dec.) ¶ 9 (stating that she spent one to three hours each shift performing side work and more than twenty

---

[3] Defendants contend that the Department of Labor has changed the standards and legal tests multiple times between 2016 and the present, creating further individualized legal issues. As explained by the Court in a recent opinion, the agency rescinded its twenty percent rule in 2018 through new guidance, but the rule codifying the rescission was withdrawn without taking effect. *Rest. Law Ctr. v. United States Dep't of Lab.*, No. 1:21-CV-1106-RP, 2022 WL 526243, at *2 (W.D. Tex. Feb. 22, 2022). This does not impede collective resolution.

[4] Defendants dispute that Martinez worked as a server at the two Perry's locations in Austin. They assert that Martinez worked there as a trainer, except for one shift where she filled in as a server. Dkt. 57 at 8 n.2.

percent of her time performing non-tipped job duties); Dkt. 51-5 (Helgason Dec.) ¶¶ 15 (stating that she spent two to two-and-a-half hours performing side work and forty-five to fifty percent of her time each shift performing non-tipped work); Dkt. 51-6 (Crawford Dec.) ¶¶ 17-18 (stating that she spent two to three hours on any given shift performing side work and thirty-five to forty-five percent of her time each shift performing non-tipped work); Dkt. 51-7 (Martinez Dec.) ¶ 6 (stating that she spent more than twenty percent of her time performing non-tipped job duties). Plaintiffs also provide evidence that side work was mandatory, *see* Dkts. 51-18, 61-4, and the side work policy was the same across locations. *See* Dkts. 51-19 through 51-23.

Defendants provide declarations from Perry's Human Resources Director, Gary Gutierrez, and two General Managers: Greg Grady, who managed the Dallas and Grapevine restaurants, and Anthony Garcia, who managed the Grapevine and Frisco locations. Both General Managers state that they did not assign unrelated side work to servers and are unaware of other managers doing so. Dkt. 58 at 12, 19. They state that servers divided the necessary side work tasks, and no server spent longer than 30 minutes completing those tasks. *Id.* at 13, 19. The General Managers aver that side work differed between servers depending on the server's work habits and pace, the area of the restaurant to which the server was assigned (main dining room or bar), and whether the server was designated as an "opener" or "closer" for a shift. *Id.* at 13-14, 19-21. Grady also states that Named Plaintiff Zarazua worked almost exclusively on private dining events, which meant he did not perform opening work and his closing work was limited to the private room. *Id.* at 12.

Defendants' evidence contradicts the evidence offered by Plaintiffs as to whether unrelated side work was required and how much time servers collectively spent performing related side work. But "the similarly situated determination is not an opportunity for the court to assess the merits of any claim by deciding factual disputes or making credibility determinations." *Segovia*,

2021 WL 2187956, at *7 (cleaned up). Despite Defendants' contention that Plaintiffs offer no evidence of unrelated side work, the record includes evidence that Plaintiffs were required to perform a variety of untipped work, including cleaning and food preparation. Whether these tasks are "unrelated" is a determination for the merits stage. The Court finds that Plaintiffs have met their burden to provide substantial evidence establishing Defendants' side work policy.

Defendants also argue that Plaintiffs' side work claims are not susceptible to collective resolution because the claims require individualized inquiries. Before *Swales*, at the conditional certification stage, this Court and others regularly certified classes of restaurant employees asserting side work claims. *See, e.g.*, *Alverson v. BL Rest. Operations LLC*, No. 16-CV-00849, 2017 WL 5491998, at *4 (W.D. Tex. Nov. 15, 2017); *see also Williams v. Bob Evans Rest., LLC*, No. CV 18-1353, 2022 WL 1120048, at *9 (W.D. Pa. Apr. 14, 2022); *Crace v. Viking Grp., Inc.*, No. 3:20-CV-176, 2021 WL 764072, at *6 (S.D. Ohio Feb. 26, 2021); *Soto v. Wings 'R US Romeoville, Inc.*, No. 15-CV-10127, 2016 WL 4701444, at *9 (N.D. Ill. Sept. 8, 2016); *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 364 (W.D. Mo. 2007). Post-*Swales*, Plaintiffs bear a heavier burden to certify the class at the outset, but the same considerations apply.

The reasoning in *Berger*, 2020 WL 5848374, at *5, is instructive here. The court denied defendants' motion to decertify a class of Perry's servers, rejecting defendants' argument that "individualized shift lengths, changing responsibilities, and the speed at which any one server performed his duties" precluded certification. *Id.* In *Berger*, the plaintiffs presented evidence of company-wide side work checklists and declarations and deposition testimony showing that opening side work alone often exceeded twenty percent of servers' time. *Id.* The court reasoned that the claim presented a common question whether the policy of requiring side work was legal,

and that question predominated over whether any individual server actually performed enough side work on a given shift to trigger liability. *Id.*

As in *Berger*, the differences Defendants raise do not preclude certification of Plaintiffs' side work claim. Although Plaintiffs differ in which area of the restaurant they served and whether they were designated as an opener or closer, the Court finds that the common issue whether Defendants required servers to perform unrelated side work or significant amounts of related side work predominates over individual differences. *Segovia*, 2021 WL 2187956, at *9 ("[T]he question is not whether Plaintiffs all have the same exact work day, but rather whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings.") (internal quotation marks omitted).

To prove their claim, Plaintiffs may rely on "representational" testimony about the common aspects of work experience of Perry's servers, as is common in FLSA collective actions. *Aboin v. IZ Cash Inc.*, No. 20-cv-3188, 2021 WL 3616098, at *3 (S.D. Tex. June 29, 2021). Some variation in the type and amount of side work performed by each server does not preclude use of representational testimony. *See Callaway v. DenOne LLC*, No. 1:18-CV-1981, 2019 WL 2610660, at *3 (N.D. Ohio June 26, 2019) (denying motion to decertify side work claim); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 540 (S.D. Tex. 2008) (holding that whether plaintiffs' off-the-clock work was compensable, defendants knew about the work, and the work was *de minimis* could be adequately raised at trial on representative testimony). That the Court may need to determine damages on an individualized basis does not preclude class certification. *T.S.*, 521 F. Supp. 3d at 697.

## C.  Uniforms and Equipment

Plaintiffs also argue that Perry's subjected them and potential opt-in plaintiffs to the same unlawful deductions for "mandatory uniforms and other business-related items, including ink pens,

aprons, and check presenters." Dkt. 50 at 14. Plaintiffs offer declarations from seven servers[5] and deposition testimony of Named Plaintiffs Paschal and Zarazua describing Defendants' alleged deductions from their pay. Plaintiffs also provide a standard uniform deduction authorization form; documentation of these deductions for two servers, Helgason and Crawford; and a report from several weeks in 2019 and 2020 showing uniform deductions for servers across multiple Perry's restaurants in Texas (Champions, Houston, Katy, Friendswood, and Grapevine). Dkts. 51-15, 51-16, 61-3.

Defendants offer the declaration of Director of Human Resources Gary Gutierrez, who asserts that Perry's has a policy of providing uniforms and equipment to employees when they begin working at Perry's. Dkt. 58-6. He states that, in the "rare case" in which a charge is imposed on a server, Perry's would have documented the charge in the employee's personnel file and on their paycheck stub. *Id.* Gutierrez avers that Perry's has no record of Paschal notifying Perry's that she paid for new uniforms. *Id.*

Plaintiffs provide sufficient evidence to support the existence of the alleged policy. Defendants dispute the frequency of uniform and equipment deductions but identify no differences among the proposed class members affecting adjudication of the alleged policy. *See Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092-MAC, 2022 WL 4089819, at *6 (E.D. Tex. Aug. 9, 2022) (holding that resolution of factual dispute over frequency of alleged violation was better resolved at the merits stage), *R. & R. adopted*, 2022 WL 4084420 (E.D. Tex. Sept. 4, 2022); *see also T.S.*, 521 F. Supp. 3d at 698 (holding that factual dispute did not preclude class certification where plaintiffs presented contrary evidence and the dispute presented a question that could be answered collectively).

---

[5] Plaintiffs offer eight declarations, but one of those, from Frisco server Ellie Kunard, does not describe any uniform or equipment deductions that she personally experienced. Dkt. 51-3.

Defendants also contend that the Named Plaintiffs are not similarly situated to the class they seek to represent because they submit no records showing that they had any items deducted from their paychecks. This distinction is immaterial. The Named Plaintiffs submit declarations and deposition testimony supporting their allegations that they had to purchase uniforms and equipment at their own expense. The FLSA prohibits "kick-backs" whether the employer deducts the cost of the items from servers' paychecks or requires servers to purchase the items themselves. 29 CFR § 531.35 (prohibiting direct or indirect kick-backs to employer, such as requiring employee to provide tools of the trade).

## D.  Conclusion

In sum, this Magistrate Judge recommends that the District Court deny certification on Plaintiffs' claims that Perry's failed to fully distribute tip pool funds, but grant certification on Plaintiffs' remaining claims that Perry's operated an unlawful tip pool, as well as on Plaintiffs' side work and uniform and equipment claims.

## V.  Content and Form of Notice

Defendants make several objections to the content and form of Plaintiffs' proposed notice.

## A.  Class Period

Plaintiffs seek to send notice to servers who worked for Defendants within three years of the date this suit was filed, January 11, 2022. Defendants contend that the class should be limited to servers who worked for Defendants within three years of the date notice is sent.

A cause of action arising out of a willful violation of the FLSA "may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The limitations period is not tolled as to individual claimants until the claimant files a written opt-in consent form with the court. 29 U.S.C. § 256(b). Plaintiffs offer no argument why the statute of limitations should be tolled. *See Keating v. FlowCo Prod. Sols., LLC*, No. 20-CV-00122, 2021 WL 9553373, at *2

14

(W.D. Tex. Nov. 17, 2021) (declining to consider whether statute of limitations should be tolled where plaintiffs did not request equitable tolling). The Court finds that the class should be limited to severs employed by Defendants up to three years before the District Court certifies the class, if it does so. *See Garcia v. TWC Admin., LLC*, No. 14-CV-985-DAE, 2015 WL 1737932, at *6 (W.D. Tex. Apr. 16, 2015) (rejecting argument that class period extended three years before commencement of lawsuit); *Tolentino v. C & J Spec-Rent Services Inc.*, 716 F. Supp. 2d 642, 654 (S.D. Tex. 2010) (stating that class period runs three years from date notice is approved by court).

## B. Locations

Plaintiffs seek to send notice to all current and former servers at Perry's restaurants in Texas. Defendants argue that the class should be limited to the Dallas, Frisco, and Grapevine locations because Plaintiffs present declarations only from those locations.

Plaintiffs provide sufficient evidence that the alleged policies apply across Perry's Texas locations. Plaintiffs do not rely solely on the declarations from servers at the Dallas, Frisco, and Grapevine locations; rather, the record shows that the alleged policies were adopted at the corporate level and intended to apply across locations. Defendants offer no evidence that other Perry's restaurants differ from Dallas, Frisco, and Grapevine. To the contrary, the testimony of the General Managers supports the contention that Defendants' policies were consistent among locations. *Cf. Lopez-Gonzales v. Ramos*, No. 2:20-CV-061-Z, 2021 WL 3192171, at *5 (N.D. Tex. July 28, 2021) (holding that plaintiffs did not meet their burden to show that servers at other locations were subject to a "universal policy"). The Court finds that notice is proper to all servers employed in Texas.

## C. Length of Opt-in Period

Plaintiffs request that opt-in plaintiffs be given 90 days from the date the notice is transmitted to return the consent form. Defendants contend that a 60-day opt-in period is sufficient. "Although

opt-in periods commonly range from as little as 30 to as many as 120 days, most courts appear to default to a notice period of 60 days, unless potential plaintiffs are difficult to contact because of their locations or other extenuating factors warrant additional time." *McCloud v. McClinton Energy Grp., L.L.C.*, No. 7:14-CV-120, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015) (collecting cases). Because Plaintiffs identify no extenuating factors warranting additional time, the Court finds that a 60-day opt-in period is sufficient. Plaintiffs also ask to send a reminder notice after 30 days; Defendants do not object. The Court recommends that the request be granted.

**D.  Method of Delivery**

Plaintiffs request authorization to send the Proposed Notice and Consent form (Dkt. 51-25) to putative class members by mail, and to send the proposed email and text notices (Dkt. 51-26) by email and text message. Plaintiffs also seek authorization to maintain a website limited to posting the Notice and Consent Form and allowing opt-in plaintiffs to sign the consent form electronically. Defendants do not object to the proposed methods of delivery, and the Court recommends that this request be granted.

**E.  Legal Advice**

Defendants object to the inclusion of the following sentence in Plaintiffs' proposed notice:

> However, if you choose not to join this lawsuit, the legal time limit for you to file a claim against Perry's will continue to run until your consent is filed with the Court or you file your own lawsuit against Perry's.

The Court recommends that Defendants' objection be overruled. *See Stuntz v. Ashland Elastomers, LLC*, No. 1:14-CV-173, 2015 WL 13942983, at *4 (E.D. Tex. Nov. 19, 2015) (overruling objection to statement that potential class members should contact a lawyer because claim may be subject to statute of limitations); *Updite v. Delta Beverage Grp.*, No. CIV A 06-0593, 2006 WL 3718229, at *5-6 (W.D. La. Dec. 15, 2006) ("It is worthwhile to mention to prospective plaintiffs

that the limitation period is running, lest the court imply that a claim will be timely so long as it is filed by the filing deadline.").

## F.   Subsequent Lawsuits

Finally, Defendants object to the statement in Plaintiffs' proposed notice authorizing use of the consent form in subsequent lawsuits. The Court agrees that this language is improper and recommends that the consent form be limited to this action. *See Minyard v. Double D Tong, Inc.*, 237 F. Supp. 3d 480, 487 (W.D. Tex. 2017), *reconsideration granted on other grounds*, No. 16-CV-00313-RAJ, 2017 WL 5640818 (W.D. Tex. Mar. 22, 2017).

## VI.   Discovery of Contact Information

Plaintiffs ask that Perry's Restaurants "be ordered to produce, within fourteen (14) days of granting this Motion, a list in a useable electronic (.xls) format of names, last known addresses, telephone numbers, e-mail addresses, and dates of employment for all members of the collective." Defendants did not object to this request. Courts routinely grant discovery of identity and contract information for putative plaintiffs after certification is granted. *Clay v. Flouderdawg*, LLC, No. 14-CA-923, 2015 WL 13796448, at *5 (W.D. Tex. Mar. 24, 2015), *R. & R. adopted*, 2015 WL 13796449 (W.D. Tex. June 2, 2015). The Court recommends that the District Court order Defendants to produce the requested discovery if the District Court certifies the class.

## VII.   Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Plaintiffs' Motion for Court-Authorized Notice (Dkt. 50). The Court recommends that the District Court **DENY** Plaintiff's claim that Perry's failed to fully distribute tip pool funds but **GRANT** certification of Plaintiffs' side work, uniform and equipment, and remaining tip pool claims.

It is **FURTHER ORDERED** that this case be **REMOVED** from this Magistrate Judge's docket and **RETURNED** to the docket of the Honorable Robert Pitman.

## VIII.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 4, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

18