IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Candice Paschal and Pedro Zarazua Jr.,** individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)<br><br>*Plaintiffs,*<br><br>v.<br><br>**Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually**<br><br>*Defendant.* | **No. 1:22-cv-00027-RP**<br><br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION** |

## I.      REPORT AND RECOMMENDATION

On December 2, 2022, Plaintiffs filed a Motion for Court-Authorize Notice, pursuant to 29

U.S.C. § 216(b), "seek[ing] to certify and send court-authorized notice to the proposed collective

of similarly situated employees ("Collective Members") defined as:

> **All individuals who worked as servers for Defendants in Texas at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage."[1]**

On January 13, 2023, the District Court referred Plaintiffs' Motion for Notice [Dkt. 50] to

the United States Magistrate Judge Susan Hightower ("Judge Hightower"). Thereafter, on March

22, 2023, Judge Hightower conducted a hearing on Plaintiffs' Motion for Court-Authorize Notice.[2]

On April 4, 2023, Judge Hightower issued a report and recommendation recommending

"that the District Court **DENY** Plaintiffs' claim that Perry's failed to fully distribute tip pool funds

---

[1]      *See* Pls' Mot., [Dkt. 50 at p. 3]; *see also* Court Order, [Dkt. 48 at p. 3] (citing Pls' Compl, [Dkt. 1 ¶ 47]).

[2]      For the Court's reference, the transcript of the motion hearing held on March 22, 2023, is *attached as* Exhibit 1.

but **GRANT** certification of Plaintiffs' side work, uniform and equipment, and remaining tip pool claims." *R. & R.*, [Dkt. 78 at 14, 18] (emphasis in original).

On April 19, 2023, Defendants filed objections to the Report and Recommendation. *See Defs' Objs*, [Dkt. 80]. Plaintiffs therefore file this response and respectfully request the Court overrule Defendants' objections and fully adopt Judge Hightower's well-reasoned recommendation.

## II.    STANDARD OF REVIEW

"A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made[.]" W.D. TEX. L. R., App'x C, R. 4(b); 28 U.S.C.§ 636(b)(1). The Court is permitted to afford the report and recommendation "whatever reliance [the] district judge, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("And in providing for a 'de novo determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.") (citing *Mathews v. Weber*, 423 U.S. 261, 275 (1976)). The Western District's Local Civil Rules require that written objections "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." W.D. TEX. L. R., App'x C, R. 4(b). The Court is not required to conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Comm'n.*, 834 F.2d 419, 421 (5th Cir. 1987).

Moreover, "[i]t is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers

submitted to the Magistrate Judge." *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y.1992). "[P]arties are not to be afforded a 'second bite at the apple' when they file objections to a Report and Recommendation, as the 'goal of the federal statute providing for the assignment of cases to magistrates is to 'increase the overall efficiency of the federal judiciary.'" *Camardo*, 806 F. Supp. 380, 382 (citing *McCarthy v. Manson*, 554 F. Supp. 1275, 1286 (D.Conn. 1982), *aff'd,* 714 F.2d 234 (2d Cir. 1983) (quoting *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. 1982) (en banc)) (footnote omitted).

### III.    FLSA LITIGATION AGAINST PERRY'S RESTAURANTS

The procedural posture and evidence in *Helgason v. Perry's Restaurants Ltd.* is clearly distinguishable from the present case. Despite relying heavily on *Helgason* to support its position, Defendants fail to mention in *Helgason,* the plaintiffs did not conduct *any* discovery prior to the court denying plaintiffs' motion for notice under *Swales. See generally Defs' Objs*, [Dkt. 80]. The *Helgason* case was filed on June 12, 2020. Shortly after the *Helgason* case was filed and prior to conducting discovery, Plaintiffs filed their motion for conditional certification pursuant to lenient two-step standard for conditional certification under *Lusardi*. In January 2021, before the court had issued a ruling on plaintiffs' motion for conditional certification under *Lusardi*, the Fifth Circuit issued its opinion in *Swales*, rejecting *Lusardi* and the two-step approach to conditional certification. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

After the Fifth Circuit issued its opinion in *Swales,* the court in *Helgason* denied, as moot, Plaintiffs' motion for conditional certification and ordered the parties to submit briefing addressing the new standard for notice under *Swales.* Pursuant to that briefing schedule, and still having not conducted *any* discovery, the plaintiffs filed their motion for notice addressing the new standard

under *Swales*. The court then denied Plaintiffs' motion—prior to Plaintiffs conducting *any* discovery—and dismissed the opt-in plaintiffs.

Unlike the plaintiffs in *Helgason*,[3] here, the parties conducted substantial phase one discovery "comprising 'issues related to resolving the question of whether other individuals are 'similarly situated' to Plaintiffs, and therefore, entitled to receive notice of their right to join this action pursuant to Section 216(b) of the FLSA." *See Order*, [Dkt. 48 at 1-3] (discussing procedural posture relating to phase one discovery). Plaintiffs have submitted substantial evidence that the policies giving rise to the violations are implemented—in fact, mandated—by Perry's corporate office across each of its locations in Texas. *See Ex. 1*, (Hearing Transcript at 7:3-8:12). Because the parties in this case have conducted substantial discovery, the record before the Court is markedly different than the record that existed at the time the plaintiffs moved for notice in *Helgason*.

Notably, in *Helgason*, after Plaintiffs' Motion for Notice was denied, and the parties completed discovery, Defendants' own document production revealed that other servers, including opt-in plaintiffs—who were dismissed without prejudice, were subject to the same policies in violation of the FLSA as Named Plaintiffs—Helgason and Crawford. *See Pls' Mot. Compel Supp. Br.*, [Dkt. 46 at 5 n.5]. Indeed, in response to summary judgment in *Helgason*, "Perry's acknowledge[d] that Plaintiffs may ultimately be entitled to very limited relief as to this claim because Perry's on 3 or 4 occasions charged at least one of the Plaintiffs for replacement of a uniform or equipment." *Helgason v. Perry's Rest.*, No. 3:20-cv-1573 [ECF No. 93 at 20, Def's Resp.] (N.D. Tex. 2022).

---

[3] *See* Pls' Mot. Compel Supp. Br., [Dkt. 46 at 5 n.5] (citing [Dkt. 46-3 at 6] (*Helgason*, Court Transcript 6:7-18).

Finally, as Judge Hightower stated in the recommendation, "[t]he Court considered the cases cited by the parties but is not bound by decisions in other cases and [the] recommendations [are] based on the record before it." *R. & R.*, [Dkt. 78 at 5]; *accord Camreta v. Greene*, 563 U.S. 692, 709 n.7, 131 S. Ct. 2020, 2033 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). Moreover, because the parties in this case, unlike the parties in *Helgason*, conducted substantial discovery prior to moving for notice, the evidence and record before the Court is markedly more substantial than the evidence before the court in *Helgason*. Simply put, as Judge Hightower aptly held, this Court is not bound by *Helgason* and the Court's decision must be "based on the record before it." *R. & R.*, [Dkt. 78 at 5].

## IV.   ARGUMENT AND AUTHORITY

As set forth below, Defendants' objections are unsubstantiated and raise no legal basis for challenging Judge Hightower's Report and Recommendation. Defendants' objections "simply rehash or mirror the underlying claims addressed in the Report [and Recommendation; therefore,] are not entitled to de novo review." *Mendez v. Dir., Tex. Dep't of Crim. Just.-Corr. Insts. Div.*, No. 6:19-cv-320-JDK-KNM, 2022 U.S. Dist. LEXIS 86203, at *2 (E.D. Tex. May 12, 2022) (citations omitted)

Plaintiffs therefore respectfully request the Court overrule Defendants' objections and adopt Judge Hightower's *Report and Recommendation* [Dkt. 78] in full.

## A.   Tip Pool Claim

Plaintiffs allege that, in violation of the FLSA tip credit defense, Perry's mandatory "tip pool was unlawful because it included employees who were not 'customarily and regularly tipped,' such as bussers and food runners, and tip pool funds were distributed to employees that were not

staffed for a particular shift." *See R. & R.*, [Dkt. 78 at 6]; *see also Pls' Mot.*, [Dkt. 50 at 11].

There is no dispute that Plaintiffs and the other servers are subject to the same compensation and tip pooling policy across all Texas locations that gives rise to the allegations in this action. *See Pls' Mot.*, [Dkt. 50 at 9-11]; *Pls' Reply*, [Dkt. 60 at 6-7]. Instead, Defendants object by reasserting the same argument that its policy is permissible and does not violate the FLSA. *See Defs' Objs*, [Dkt. 80 at 11-12]; *Defs' Resp*, [Dkt. 57 at 13-14]; *Ex. 1*, (Hearing Transcript, at 25:4-14).

     1.    **"Nothing in *Swales* indicates or encourages courts to circumvent the [similarly situated] analysis and move directly to the merits" or "adjudicate the lawfulness of Defendants' policy."[4]**

Here, "Defendants admit that "Perry's distributed tip pool funds from a weekly tip pool to employees who had worked as bussers and food runners," as well as bartenders and hosts, but argue that these employees are eligible tip pool recipients and weekly distribution is proper." *R. & R.*, [Dkt. 78 at 6] (citing *Defs' Resp.*, [Dkt. 57 at 15]); *see also Ex. 1*, (Hearing Transcript, at 27:15-22) (discussing and identifying that Defendants' argument, regardless of whether the merits can be answered "collectively or not," is that Perry's policy is permissible). However, as Judge Hightower properly concluded, "Defendants' arguments are not appropriate for a motion for class certification. . . ." *R. & R.*, [Dkt. 78 at 6]. *See e.g.*, *Cortez v. Casa do Brasil, LLC*, No. 4:21-CV-03991, 2022 U.S. Dist. LEXIS 227496, at *13 (S.D. Tex. Dec. 19, 2022) ("Defendant['s] predominant defense—that its tip pools are valid—does not require this Court's analysis at this point. . . .[because] [it] seek[s] to address the merits of Plaintiff's claim by analyzing whether CSRs are managers. . . .[b]ut this inquiry is inappropriate at the notice stage.").

---

[4]   *See Torres v. Chambers Protective Servs.*, No. 5:20-CV-212-H, 2021 U.S. Dist. LEXIS 146586, 2021 WL 3419705, at *10 (N.D. Tex. Aug. 5, 2021); *Collins v. Pel-State Bulk Plant, LLC*, No. 20-CV-00083, 2021 WL 5234968, at *4 (W.D. Tex. Sept. 29, 2021).

At this time, "[t]he focus is not whether there has been an actual violation or whether Plaintiffs can meet their burden for summary judgment, but whether Plaintiffs and potential opt-in plaintiffs are similarly situated—such, that 'facilitating notice is [] need[ed] for [the] 'efficient resolution in one proceeding of common issues' of law and fact arising from the same alleged discriminatory activity.'" *Pls' Mot.*, [Dkt. 50 at 6] (citing *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) (citing *Hoffmann-La Roche*, 493 U.S. at 170, 172-173))

This is further exemplified under Fed. R. Civ. P. 23—a more rigorous standard for class certification—does not require the party seeking certification "to prove the merits of the class claim or even to establish a probability that the action will be successful." *Pls' Mot.*, [Dkt. 50 at 7] (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)). Even under the more rigorous Rule 23 standard, here, the "common question [whether defendants' policies violate the tip credit provision of the FLSA] is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Pls' Mot.*, [Dkt. 50 at 7] (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016).

Moreover, as Judge Hightower stated, "[c]ourts must reach the merits only when they are intertwined with threshold issues of class certification." *R. & R.*, [Dkt. 78 at 7] (citing *Swales*, 985 F.3d at 441; *Cortez*, --- F. Supp. 3d ----, 2022 WL 17811963, at *3 (S.D. Tex. Dec. 19, 2022) (explaining that a court must reach a "merits issue" only if it is a "dispositive, threshold matter"); *Collins*, 2021 WL 5234968, at *4 ("But the notice stage is not the equivalent of the dispositive motions stage and thus is not the proper time to adjudicate the lawfulness of Defendants' policy.")). *See also Torres*, 2021 U.S. Dist. LEXIS 146586, 2021 WL 3419705, at *10 ("Nothing in *Swales* indicates or encourages courts to circumvent the notice analysis and move directly to the

merits."). Therefore, "[t]he lawfulness of Defendants' policies is not a basis for denying class certification." *R. & R.*, [Dkt. 78 at 7].

Contrary to Defendants arguments [Dkt. 80 at 13], unlike the plaintiffs in *Swales* and *In re JP Morgan*, here, the similarly situated determination does not involve "potentially dispositive, threshold matters" that, if ignored until after notice is issued, would result in "alerting those who cannot ultimately participate in the collective [which] 'merely stirs up litigation,' [] [] what *Hoffmann-La Roche* flatly proscribes." *In re JPMorgan*, 916 F.3d at 502 (citing *Hoffmann-La Roche*, 493 U.S. at 174). *See e.g., Cortez*, 2022 U.S. Dist. LEXIS 227496, at *14 ("Consideration of CSRs' management status does not impact whether servers, bartenders, and gauchos can bring an FLSA collective action. Rather, this goes to the lawfulness of Defendant's actions.").

> **2.     Defendants do not point to any significant differences or individualized facts—and there are none—that would prevent this Court from determining whether Defendants complied with the tip credit on a collective basis.**

To prevail on its tip credit defense, Defendant will ultimately be required to prove that it distributed the tips from the tip pool solely among "customarily and regularly tipped" employees. *See Pls' Reply*, [Dkt. 60 at 6-7]. *see also* Ex. 1, (Hearing Transcript at 33:10-35:18-25) (plaintiffs explaining that ". . .looking at those determinations [whether employee is one who 'customarily and regularly receives tips] does not mean that the merits question is incapable of being answered collectively because. . .whether. . .the food runner. . .or the busser is a lawful or unlawful tip pool participant, that applies to all servers. Why? Because it's a common policy that incorporates that distribution to [the same] alleged individual[s at all locations]."

Defendants' contention that "individualized inquiries are necessary because a tip pool recipient's eligibility depends on whether the employee is one who 'customarily and regularly receives tips,' which is 'determined on the basis of his or her activities, not on the employee's job

title. . .does *not* prohibit collective resolution." *R & R*, [Dkt. 78 at 7] (citations omitted) (emphasis

added). During the hearing, Plaintiffs further explained:

> ". . .the differences in job duties pertaining to the tip pool recipients here, the[] is
> evidence, and defendants' own records indicate the same manner in which Perry's
> creates at a corporate level the side-work checklist, the training materials
> identifying the required duties for servers. They have the exact same checklist for
> bussers, food runners, hosts and bartenders, and it's not infrequent. . . .It is
> delineated in these job duties for bussers that they must clean the urinals, they must
> clean the floors, they must clean the soap dispensers. . . .it [is] not just a[n] argument
> that [i]s raised for the sake of demonstrating some commonality. It is corporate
> policy and it is a policy that [is] applicable amongst all locations. . . . it does n[o]t
> matter what location that the tip pool is administered. It [i]s the same tip pool. That
> [i]s required and mandatory for all servers."

*See* Ex. 1, (Hearing Transcript at 35:3-36:7, 36:13-25). *See e.g.*, *Garcia-Alvarez*, 2022 U.S. Dist.

LEXIS 105113, at *31. As the Court noted, "Defendants contend that only eligible employees

participated in the tip pool and the distribution of funds was lawful. These defenses would apply

to any plaintiff." *R. & R.*, [Dkt. 78 at 7]. Like in *Cortez*, here, Defendants' own argument further

supports Judge Hightower's determination "that the necessary inquiry does not prohibit collective

resolution." *R. & R.*, [Dkt. 78 at 7]. *See e.g.*, *Cortez*, 2022 U.S. Dist. LEXIS 227496, at *14 ("If

anything, Defendant's argument provides more reason for collective analysis of whether CSR's

inclusion in the tip pool is lawful.").

    Moreover, as Judge Hightower concluded, "[w]hen a defendant asserts the same defense

against each plaintiff, collective treatment is 'less problematic,' even though the defense may

require specific factual inquiries into each plaintiff." *R. & R.*, [Dkt. 78 at 7] (citing *Segovia v. FuelCo*

*Energy LLC*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *10 (W.D. Tex.May 28, 2021)

(quoting *Snively v. Peak Pressure Control*, LLC, 314 F. Supp. 3d 734, 742 (W.D. Tex. 2018)).

    Defendants also object by asserting, without any factual or legal support, that "[c]ontrary

to the R&R's apparent belief. . .those liability issues cannot be determined collectively." *Defs'*
*Objs.*, [Dkt. 80 at 15]. However, as Judge Hightower stated, Defendants "point to no evidence of
individualized differences in the busser and food runner positions that would prohibit determining
whether these employees, as a group, "customarily and regularly received tips" and thus are valid
tip pool participants." *R. & R.*, [Dkt. 78 at 7] (citing *Cortez*, 2022 WL 17811963, at *6 (granting
class certification of tip pool claim alleging that customer service representatives improperly
participated in tip pool); *Torres v. Chambers Prot. Servs., Inc.*, No. 5:20-CV-212-H, 2021 WL
3419705, at *7 (N.D. Tex. Aug. 5, 2021) (holding that economic-realities test, a multi-factor
inquiry, could be applied on collective basis to supervisors and non-supervisors, allowing collective
resolution of potential defense)). *See also Garcia-Alvarez*, 2022 U.S. Dist. LEXIS 105113, at *31
(granting class certification of tip pool claim and finding that "the potential collective action
members are similarly situated in that they participate in [defendant's] alleged invalid tip pooling
plan that includes CSRs[]").

## B.    Side Work

Judge Hightower properly rejected Defendants' arguments, in a well-reasoned Report,
finding that the "Plaintiffs have met their burden to provide substantial evidence establishing
Defendants' side work policy." *R. & R.*, [Dkt. 78 at 11]. Here, "Plaintiffs support their claim as to
Perry's side work policy with documentary evidence, deposition testimony, and declarations." *R.
& R.*, [Dkt. 78 at 9]. *See also Pls' Reply*, [Dkt. 60 at 8] (citing *Pls' Mot.*, [Dkt. 50 at 12-13 n. 11]. "The
servers provide similar accounts of the side work tasks they were asked to perform, and all aver that
they spent more than 20 percent of their time during each workweek performing non-tipped work."
*R. & R.*, [Dkt. 78 at 9] (citing [Dkt. 51-1] (Paschal Dec.) ¶¶ 11-12; [Dkt. 51-2] (Zarazua Dec.) ¶¶ 13-

14 (same); [Dkt. 51-3] (Kunard Dec.) ¶ 8 (same); [Dkt. 51-4] (Parks Dec.) ¶ 9; [Dkt. 51-5] (Helgason

Dec.) ¶¶ 15; [Dkt. 51-6] (Crawford Dec.) ¶¶ 17-18; [Dkt. 51-7] (Martinez Dec.) ¶ 6). "Plaintiffs also

provide evidence that side work was mandatory, *see* Dkts. 51-18, 61-4, and the side work policy was

the same across locations[,] [*s*]*ee* Dkts. 51-19 through 51-23." *R. & R.*, [Dkt. 78 at 10]. *See also Pls'*

*Reply*, [Dkt. 60 at 8] (citing *Pls' Mot.*, [Dkt. 50 at 12-13 n. 11]).

1.   **The differences Defendants rise do not preclude certification of Plaintiffs' side
    work claim because common issues predominate over individual differences.**

Defendants object to the Report and Recommendation by reasserting the same argument—

that Plaintiffs' side work claims are inherently individualized because the side work duties, work

schedule, and location (i.e., main dining area or bar area) where servers performed their job duties

varied. *See Pls' Reply*, [Dkt. 60 at 9] (citing *Defs' Resp.*, [Dkt. 57 at 18-20]). However, this argument

was previously raised by Perry's in a lawsuit involving similar claims and was rejected." *Pls' Reply*,

[Dkt. 60 at 9] (citing *Berger v. Perry's Steakhouse of Ill., LLC*, 2020 U.S. Dist. LEXIS 182095, at *12-

13 ("reject[ing Perry's] arguments that individualized shift lengths, changing responsibilities, and

the speed at which any one server performed his duties preclude certification").

Here, like in *Berger*, "the plaintiffs presented evidence of company-wide side work

checklists and declarations and deposition testimony showing that opening side work alone often

exceeded twenty percent of servers' time." *R. & R.*, [Dkt. 78 at 11] (citing *Berger*, 2020 WL

5848374, at *5). In *Berger*, "[t]he court reasoned that the claim presented a common question

whether the policy of requiring side work was legal, and that question predominated over whether

any individual server actually performed enough side work on a given shift to trigger liability." *R.

& R.*, [Dkt. 78 at 11] (citing *Berger*, 2020 WL 5848374, at *5). Therefore, "as in *Berger*, [here], the

differences Defendants raise do not preclude certification of Plaintiffs' side work claim.

As Judge Hightower determined, "[a]lthough Plaintiffs differ in which area of the restaurant they served and whether they were designated as an opener or closer, the Court finds that the common issue whether Defendants required servers to perform unrelated side work or significant amounts of related side work predominates over individual differences." *R. & R.*, [Dkt. 78 at 12] (citing *Segovia*, 2021 WL 2187956, at *9 ("[T]he question is not whether Plaintiffs all have the same exact work day, but rather whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings.") (internal quotation marks omitted).

2.   **Plaintiffs "may rely on 'representational' testimony about the common aspects of work experience of Perry's servers, as is a common in FLSA collective actions."[5]**

Contrary to Defendants argument that Judge Hightower "suggested Plaintiffs could proceed through representational testimony [] something [] Plaintiff did not suggest themselves [,]" [Dkt. 80 at 20], here, Plaintiffs discussed the use of representative testimony in their motion, *see* [Dkt. 50 at 7], their reply [Dkt. 60 at 7-10], and at the hearing on March 23, 2023, specifically, stating:

> ". . .the answer that we have to address now is whether the merits can be answered collectively and that can be because the[] [plaintiffs] [a]re all subject to the same side-work policy. In addition to th[e] [common side work policy], we have *Mount Clemens*,[6] which allows for representative testimony to support those claims. And cases in the Fifth Circuit,[7] as well, have allowed representative testimony on this issue and plaintiffs do cite to *Callaway* in their reply[8] which [involves] same individualized defenses that defendant raises in this case. The defendant in the *Callaway* case also raises the [argument] [that] individualized shift times, varying tasks argument. . .would preclude notice; and in that instance, the court [in

---

[5]   *R. & R.*, [Dkt. 78 at 12] (citing *Aboin v.IZ Cash Inc.*, No. 20-cv-3188, 2021 WL 3616098, at *3 (S.D. Tex. June 29, 2021).

[6]   *See Aboin v. Iz Cash*, No. 4:20-CV-03188, 2021 U.S. Dist. LEXIS 155983, at *8-9 (S.D. Tex. June 29, 2021) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)).

[7]   *See also Pls' Reply*, [Dkt. 60 at 7] (citing *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016) (holding that "[e]stimates [of average hours worked] may come from representative testimony, and the '[t]estimony of some employees concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not.'") (quoting *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985) (citations omitted)).

[8]   *See Pls' Reply*, [Dkt. 60 at 10] (citing Callaway, 2019 U.S. Dist. LEXIS 106991, at *6 ("Despite th[e] variability [of time spent performing side work among the class], the Court finds that the certification is appropriate because courts regularly allow representative testimony about the number of hours worked in FLSA collective actions.").

*Callawoy*] [held] that [defendant's argument] [i]s not persuasive because of the fact that defendant is allowed to use representative testimony at trial.") (italics added).

*See Ex. 1* (Hearing Transcript at 10:2-11:8).

Other than citing to *Swales*, Defendants also object to the Report and Recommendation by stating, without any factual support, that "representational testimony. . . .would not resolve the threshold problem that determining Perry's liability would still require 'a highly individualized inquiry into each potential opt-in's circumstances.'" *Defs' Objs*, [Dkt. 80 at 20] (citing *Swales*, 985 F.3d at 442). Notably, Defendants do not (and cannot) identify what "threshold problem. . .would still require 'a highly individualized inquiry[.]" *See generally Defs' Objs*, [Dkt. 80].

Moreover, as this Court and other district courts have held, "[t]o prove their claim, Plaintiffs may rely on 'representational' testimony about the common aspects of work experience of Perry's servers, as is a common in FLSA collective actions." *R. & R.*, [Dkt. 78 at 12] (citing *Aboin*, 2021 WL 3616098, at *3. Indeed, "[s]ome variation in the type and amount of side work performed by each server does not preclude use of representational testimony." *R. & R.*, [Dkt. 78 at 12] (citing *Callaway v. DenOne LLC*, No. 1:18-CV-1981, 2019 WL 2610660, at *3 (N.D. Ohio June 26, 2019) (denying motion to decertify side work claim); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 540 (S.D. Tex. 2008) (holding that whether plaintiffs' off the clock work was compensable, defendants knew about the work, and the work was *de minimis* could be adequately raised at trial on representative testimony)).

Therefore, as Judge Hightower properly concluded, the fact "[t]hat the Court may need to determine damages on an individualized basis does not preclude class certification." *R. & R.*, [Dkt. 78 at 12] (citing *T.S.*, 521 F. Supp. 3d at 697). *See also Pls' Reply*, [Dkt. 60 at 10] (citing *Callaway*, 2019 U.S. Dist. LEXIS 106991, at *6 ("Despite th[e] variability [of time spent performing side work

among the class], the Court finds that the certification is appropriate because courts regularly allow representative testimony about the number of hours worked in FLSA collective actions."); *Berger v. Perry's Steakhouse of Ill., LLC*, 2020 U.S. Dist. LEXIS 182095, at *12-13 ("reject[ing Perry's] arguments that individualized shift lengths, changing responsibilities, and the speed at which any one server performed his duties preclude certification")).

3.   **The side work claim and evidence in *Garcia-Alvarze v. Fogo De Chao* is distinguishable from the present case.**

Defendants rely heavily on *Garcia-Alvarez*. In *Garcia-Alverze*, the plaintiffs failed to provide sufficient evidence of a common policy or practice and could not show that the class members were similarly situated, which led the court to deny class certification, in part, on plaintiff's side work claim. *See Garcia-Alvarez*, 2022 U.S. Dist. LEXIS 105113, at *18-19 (noting differences across the restaurant locations, job positions (including different untipped positions) who handled the meat preparation duties, and the variations in job codes (such as "non-tipped Person in Charge" code and "Meeting" job code) used at some locations). In denying certification on the side work claim, the court noted differences pertaining to "the times the churrasqueiros arrive, how frequently churrasqueiros perform butchering duties during a shift, [] whether churrasqueiros performing meat-cutting duties clock in using a PIC or butcher code. . . .[,] and. . .churrasqueiros [] required to spend more than 20% performing other duties [were]. . .not included in the tip pool." *Garcia-Alvarez*, 2022 U.S. Dist. LEXIS 105113, at *20.

Unlike *Garcia-Alverze*, here, Plaintiffs and the proposed collective are similarly situated as to Defendant's side work policy that requires all servers to perform nontipped work at $2.13 per hour. In other words, unlike *Garcia-Alverze*, here, there is no dispute that Plaintiffs and all the other servers performed the same sidework, subject to the same sidework policy and sidework checklists,

and were paid $2.13 per hour for all hours worked as servers. *See Pls' Mot.*, [Dkt. 50 at 12-13]; *Pls' Reply*, [Dkt. 60 at 5, 8-10]; *see also Ex. 1* (Hearing Transcript at 11:12-14:5) (plaintiffs discussing the side work policy and stating that "the evidence for side work -- for the common side-work policy so the question that is imperative is, is it common to all servers? And here. . .defendants [] do not dispute that all servers are required to perform side work. That is not disputed.").

Moreover, here, "Defendants' evidence contradicts the evidence offered by Plaintiffs as to whether unrelated side work was required and how much time servers collectively spent performing related side work. But 'the similarly situated determination is not an opportunity for the court to assess the merits of any claim by deciding factual disputes or making credibility determinations.'" *R & R.*, [Dkt. 78 at 11] (citing *Segovia* 2021 WL 2187956, at *7 (cleaned up)).

Accordingly, unlike *Garcia-Alverze*, here, "[a]lthough Plaintiffs differ in which area of the restaurant they served and whether they were designated as an opener or closer, the Court finds that the common issue whether Defendants required servers to perform unrelated side work or significant amounts of related side work predominates over individual differences. *Segovia*, 2021 WL 2187956, at *9 ("[T]he question is not whether Plaintiffs all have the same exact work day, but rather whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings.") (internal quotation marks omitted); cf. *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) Ltd. Liab. Co.*, Civil Action No. 4:21-CV-00124, 2022 U.S. Dist. LEXIS 105113, at *22 (E.D. Tex. June 13, 2022) ("resolving this factual dispute for determining whether the proposed collective is similarly situated would be improper.").

Here, Judge Hightower determined that Plaintiffs' evidence, including declarations from servers at different locations and evidence of the mandatory side work policy, established a

common policy or practice that affected all class members. *See R & R*, [Dkt. 78 at 9-10] Therefore, as Judge Hightower concluded, "the differences Defendants raise do not preclude certification of Plaintiffs' side work claim." *R & R*, [Dkt. 78 at 11-12] (citing *Berger*, 2020 WL 5848374, at *5).

## C.     Uniform and Equipment

"[P]laintiffs must establish 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'" *T.S. v. Burke Found.*, 521 F. Supp. 3d 691, 696 (W.D. Tex. 2021) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir.1995)). "To determine whether an FLSA plaintiff has met his or her burden, courts often look at 'whether potential plaintiffs were identified, . . . whether affidavits of potential plaintiffs were submitted, . . . and whether evidence of a widespread discriminatory plan was submitted.'" *T.S. Burke*, 521 F. Supp. 3d 691, 696 (citation omitted).

Here, Defendants do not dispute, and the evidence shows, that Defendants enforce the same policy requiring all servers to purchase mandatory uniforms, tools, and other non-203(m) items—items that are not board, lodging, or other facilities—in violation of the tip credit. *See R. & R.*, [Dkt. 78 at 12-13] (citing Dkts. 50-15, 51-16, 61-3). Defendants object to the *Report and Recommendation* asserting that Judge Hightower failed 1) ". . . .to acknowledge that Perry's declarations stated that Perry's had no record of the named Plaintiffs being subject to such a deduction. . . ."; and 2) ". . .to note that the sporadic occurrences of payroll deductions proffered by Plaintiffs were culled from almost 18,000 pages of voluminous payroll data." *Defs' Objs*, [Dkt. 80 at 21].[9] However, this is simply incorrect and unsupported. *See R. & R.*, [Dkt. 78 at 13-14].

---

[9] Plaintiffs submitted a ***sample*** from reports produced in response to a subpoena duces tecum served on ADP (Defendants' payroll company) containing hundreds of deductions for uniforms and other items. In lieu of attaching hundreds of pages for the court to review, Plaintiffs submitted a sample demonstrating uniform deductions for

In fact, Judge Hightower cites and discusses the evidence provided by the parties:

"Plaintiffs offer declarations from seven servers and deposition testimony of Named Plaintiffs Paschal and Zarazua describing Defendants' alleged deductions from their pay. Plaintiffs also provide a standard uniform deduction authorization form; documentation of these deductions for two servers, Helgason and Crawford; and a report from several weeks in 2019 and 2020 showing uniform deductions for servers across multiple Perry's restaurants in Texas (Champions, Houston, Katy, Friendswood, and Grapevine)." *R. & R.*, [Dkt. 78 at 13] (citing *Pls' App.*, [Dkts. 51-15, 51- 16, 61-3]) (internal footnote omitted).

"Defendants offer the declaration of Director of Human Resources Gary Gutierrez, who asserts that Perry's has a policy of providing uniforms and equipment to employees when they begin working at Perry's[;] [that] in the 'rare case' in which a charge is imposed on a server, Perry's would have documented the charge in the employee's personnel file and on their paycheck stub[;] [and] that Perry's has no record of Paschal notifying Perry's that she paid for new uniforms." *See R. & R.*, [Dkt. 78 at 13] (citing *Defs' App.*, [Dkt. 58-6]).

Defendants, during the hearing and in their response, raised the same unsupported arguments that "individual determinations would be required. . . ." because each individual would have "to demonstrate that he or she was improperly required to bear the coast, or at least that Perry's had knowledge of the expenditure." *Defs' Objs*, [Dkt. 80 at 22]. Defendants' arguments are incorrect and are wholly unsupported. *See Ex. 1,* (Hearing Transcript at 39:18-40:21); Cf. *Nail v. Shipp*, No. 17-00195-KD-B, 2019 U.S. Dist. LEXIS 132072, at *18 (S.D. Ala. 2019) (The result "cannot be avoided by simply requiring [Plaintiffs] to make such purchases on their own, either in advance of or during the employment.") (quoting *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002)).

As Judge Hightower held, any variation among collective members regarding deductions is an issue that goes to damages and can be decided collectively. *See R & R*, [Dkt. 78 at 13]; *Pls' Reply*, [Dkt. 60 at 11] (citing *Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 553 (W.D. Mo. 2017) ("individual

---

Servers at Perry's locations in Texas—#10 Champions, #12 Katy Freeway in Houston, Texas, #16 Cinco Ranch in Katy, Texas, #22 Bay Brook in Friendswood, Texas, and #24 Grapevine, and #28. *Pls' Mot.*, [Dkt. 50 at 14].

Case 1:22-cv-00027-RP   Document 81   Filed 05/03/23   Page 18 of 20


inquiries into the amount that employees were required to pay to reimburse their restaurants will not bar certification of the proposed classes.") (citing *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (the need "for some individualized determinations at the liability and damages stage does not defeat class certification")); *Vaquero v. Ashley Furniture Indus.*, Inc., 824 F.3d 1150, 1155 (9th Cir. 2016) (same); cf. *Lopez v. Fun Eats & Drinks, LLC*, 2021 U.S. Dist. LEXIS 132407, at *9 (N.D. Tex. July 15, 2021) (finding defendant was divested of the tip credit regardless of the frequency or amount of the deductions). Indeed, Defendants' arguments regarding any purported differences in injury do "not disprove the fact that Defendants enforced an FLSA-violating policy to which all class members were subjected." *Cope*, 354 F. Supp. 3d 976, 983 ("Differences in injury flowing from enforcement of the policy is not a proper defense or basis for decertification, as differences in injury do not disprove the claim that Defendants enforced an FLSA-violating policy to which all class members were subjected.")

Finally, contrary to Defendants' argument regarding the lack of records supporting paycheck "deductions" [Dkt. 80 at 21], it makes no difference whether Defendants required servers to pay for these items on their own, out-of-pocket, or whether Defendants deducted the amount directly from their paychecks. *R. & R.*, [Dkt. 78 at 13] (citing 29 C.F.R. § 531.35 (prohibiting direct or indirect kick-backs to employer, such as requiring employee to provide tools of the trade)); *accord Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1157-58 (N.D. Ala. 2018) ("The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick-back' is made in cash or in other than cash." (quoting *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (11th Cir. 2011); *Dix v. RCSH*

*Operations, LLC*, No. 2:20-cv-98, 2020 U.S. Dist. LEXIS 156169, at *10 n.2 (M.D. Fla. Aug. 28, 2020) ("There is no legal difference between an employer requiring a worker to have the tools before the first day of work, requiring the tools be purchased during the first workweek, or deducting the cost of the tools from the first week's wages.") (citing *Arriaga*, 305 F.3d at 1237)).

Plaintiffs submitted evidence of a common policy in violation of the FLSA, which all of Defendants' servers were subjected to—a policy requiring them to pay for uniforms, tools, and other non-203(m) items in violation of the FLSA's tip credit. *See Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295 (5th Cir. Mar. 18, 2022) (Any deduction "violates § 203(m) unless the 'facilities' it covers counts as a 'wage.'"); 29 C.F.R. § 531.3(d)(2) (the cost of furnishing uniforms and of their laundering is an expense that is "primarily for the benefit or convenience of the employer [and] will not be recognized as reasonable."). Defendants do not dispute the existence of this policy, and therefore, as Judge Hightower correctly found, Plaintiffs are similarly situated to the class they seek to represent because they have shown they were all subject to this policy in violation of the FLSA.

*       *       *

Accordingly, for these reasons and those expressed in the Report and Recommendation, this Court should overrule Defendants' objections and adopt Judge Hightower's well-reasoned Report and Recommendation in full. Finally, Plaintiffs request all such other and further relief as the Court deems appropriate.

Respectfully submitted,


By: */s/ Drew N. Herrmann*
       Drew N. Herrmann
       Texas Bar No. 24086523
       *drew@herrmannlaw.com*
       Pamela G. Herrmann
       Texas Bar No. 24104030
       *pamela@herrmannlaw.com*
       **HERRMANN LAW, PLLC**
       801 Cherry St., Suite 2365
       Fort Worth, TX 76102
       Phone: 817-479-9229
       Fax: 817-840-5102

     -AND-

       Harold L. Lichten,
       *Admitted pro hac vice*
       hlichten@llrlaw.com
       Matthew Thomson,
       *Admitted pro hac vice*
       mthomson@llrlaw.com
       Jane Farrell,
       *Admitted pro hac vice*
       jfarrell@llrlaw.com
       **LICHTEN & LISS-RIORDAN, P.C.**
       729 Boylston St., Suite 2000
       Boston, MA 02116
       Phone: (617) 994-5800

       ATTORNEYS FOR PLAINTIFFS
       AND COLLECTIVE MEMBERS

## CERTIFICATE OF SERVICE

       I certify that on May 3, 2023, this document will be filed via CM/ECF, which will cause a copy to be served on all counsel of record.

       */s/ Drew N. Herrmann*
       Drew N. Herrmann