IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Candice Paschal and Pedro Zarazua Jr., individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)**<br><br>*Plaintiffs,*<br><br>v.<br><br>**Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille; and Christopher V. Perry, individually**<br><br>*Defendant.* | No. 1:22-cv-00027-RP<br><br><br>PLAINTIFFS' MOTION TO ENTER DAMAGES CALCULATIONS |

Pursuant to the Court's Findings of Fact and Conclusions of Law (Dkt. 227), Plaintiffs file this Motion to Enter a Final Damages Calculation. Plaintiffs request that the Court enter final judgment consistent with the Findings of Fact and Conclusions of Law and the calculations set forth in the Filtered Exhibits attached hereto. As set forth below, Plaintiffs request that the Court enter the final damages calculation in the amount of $10,511,019.46 in single damages under the Fair Labor Standards Act ("FLSA"), plus liquidated damages in the amount of $10,511,019.46, plus post-judgment interest pursuant to 28 U.S.C. § 1961. The final damages amount for each opt-in Plaintiff is fully set forth in Filtered Exhibit P-375, submitted herewith.[1]

---

[1]     Although all opt-in Plaintiffs pursued their claim for damages through trial, based on the Court's holding that Plaintiffs had only shown a tip pool violation in certain weeks, and not in others, there are several opt-in Plaintiffs who will not recover damages. Therefore, only those opt-in Plaintiffs who will recover damages based on the Court's Findings are included in the Exhibits submitted with this Motion.

1

This damages calculation takes into account all issues discussed in the Court's Findings of Fact and Conclusions of Law, *see* Dkt. 227, and this final amount is reasonable and conservative given the Court's Findings and Defendants' own calculations.

## I.   THE COURT'S FINDINGS AND CONCLUSIONS

Plaintiffs consist of a group of approximately 750 servers who worked at one or more of Defendants, Perry's Restaurants Ltd. and Christopher V. Perry ("Perry's") restaurant locations. Plaintiffs filed this action against under the Fair Labor Standards Act ("FLSA") and alleged that Perry's violated the FLSA by "t[aking] a portion of their tips to fund its tip pool and used the funds to pay employees who were working morning shifts while the restaurants were closed to the public." *See* (Dkt. 227 at 2).

The Court conducted a two-day bench trial beginning on March 31, 2025 and held closing arguments on July 10, 2025. Following post-trial briefing and closing argument, the Court entered Findings of Fact and Conclusions of Law on November 10, 2025. *See* Dkt. 277. The Court held:  1) Opt-in Plaintiffs were servers at Perry's and were required to turn over a portion of their tips to Perry's each week for a mandatory, weekly tip pool; 2) Perry's used these tips from the tip pool to pay employees in the busser, host, server assistant, service well, and food runner job codes who worked their entire or nearly their entire shift when the restaurant was closed;[2] 3) Perry's violated the FLSA by paying the "AM employees"[3] working in these job

---

[2]   The Court found these employees performing tasks such as "cleaning restrooms, sweeping and scrubbing floors, sweeping debris in the parking lot, checking the landscaping and for trash in flower beds, polishing dirty exterior glass around the restaurant, cleaning, sweeping, and setting the patio, polishing silverware, restocking, and preparing kitchen items." Dkt. 277 at 6-7.

[3]   The Court defined "AM" as staff who worked a shift that began before 4:00 p.m. and ended before 5:00 p.m.  (excluding those working during opening hours on Fridays or

codes from the tip pool because they did not customarily and regularly receive tips; 4) Plaintiffs are entitled to full statutory minimum wage and reimbursement of all tips contributed to the unlawful tip pool for each week in which an AM employee worked a shift in the busser, host, server assistant, service well, and food runner job codes; 5) Defendant Christopher Perry was an "employer" as that term is defined in the FLSA; and 6) Perry's violations of the FLSA – by which they used servers' tips to pay off-hour employees cleaning and preparing the restaurant – were willful and Perry's failed to demonstrate any good faith defense.

In its Order, the Court allowed Plaintiffs the opportunity to correct their damages calculation so that it was consistent with the Court's Findings of Fact and Conclusions of Law. The Court asked that Plaintiffs address the following issues:

- Plaintiffs must omit from their analysis all damages based on the alleged violation of AM shifts worked by Bartenders, *see* Dkt. 277 at 32;

- Plaintiffs must exclude any shifts worked by PM employees (who began work after 5:00 p.m.), therefore, in accordance with the Court's order, damages based on that alleged violation (i.e., shifts worked by PM employees) must be excluded *see* Dkt. 277 at 32);

- If there are weeks, such as during the COVID-19 pandemic, during which Plaintiffs received the full minimum wage instead of the $2.13 subminimum wage, Plaintiffs will correct the damages calculations to omit those weeks or address this issue in their filings, *see* (Dkt. 277 at 32);

- Plaintiffs must correct any error or address any remaining issues as to the duplicate counting of individual employees, *see* Dkt. 277 at 32);

- Plaintiffs must correct any error or address any remaining issues as to the erroneous inclusion of Opt-In Plaintiffs who have settled or dismissed their claims, *see* (Dkt. 277 at 32);

- Plaintiffs must correct any error or address any remaining issues as to the damages based on shifts where an employee erroneously "clocked out" long after the restaurant was already closed, *see* (Dkt. 277 at 32);

---

holidays). Dkt. 276 at p. 6. Plaintiffs AM Shifts are more limited, only including those in which a shift began before 2:00 p.m. and ended before 5:00 p.m.

As discussed below, all of these issues (as well as other issues) have been addressed.

## II.    PLAINTIFFS' ADJUSTMENTS TO THE LIST OF UNLAWFUL AM SHIFTS AND UNLAWFUL TIP POOLS

At trial, Plaintiffs admitted Exhibit P-371, which contained a summary of all "AM Shifts" worked by employees at the thirteen Perry's restaurant locations in the following positions:

| Job Code |
|---|
| AM Bar |
| AM Bartender |
| Bar Back |
| Busser |
| FoodRun |
| Food Runner |
| Host |
| PM Bar |
| PM Bartender |
| SA |
| SvcWellBOH |
| SvcWellFOH |
| Service Well FOH |
| XXX Busser |
| XXX Host |
| XXXFoodRun |
| XXXFood Runner |

Exhibit P-371 *excluded* any "AM Shifts" worked on Fridays or holidays for all locations.[4] For the Park District locations, before September 11, 2020, only weekend AM shifts were included. After September 11, 2020, the criteria was the same as the other locations. For the Memorial location, only weekend AM shifts were included. Garg Decl. at ¶¶ 11-12.

---

[4] The excluded holidays were New year's, Valentine's, Easter Sunday, Mother's day, Father's day, Thanksgiving, Christmas Eve, New Year's Eve.

4

### A. Removal of Bartender AM Shifts

In its Findings of Fact and Conclusions of Law, the Court "instructed [Plaintiffs] to omit from their damages calculations shifts worked by Bartenders as described above." (Dkt. 277 at 32). In accordance with the Court's order, Plaintiffs adjusted the AM shift list admitted as Exhibit P-371 to *exclude* any AM shifts worked under the AM Bar, AM Bartender, Bar Back, PM Bar, and PM Bartender job codes. Garg Decl. at ¶ 13. Therefore, damages based on those shifts have been removed and are not included in Plaintiffs' damages calculations reflected in the *filtered* Exhibit P-375 (attached hereto).

### B. Erroneous Clock-Outs Long After the Restaurant Was Closed

The Court also instructed Plaintiffs to address "damages based on shifts where an employee erroneously 'clocked out' long after the restaurant was already closed." Dkt. 277 at 32. In accordance with the Court's instructions, Plaintiffs filtered the AM shift list admitted at Exhibit P-371 to *exclude* any AM shifts occurring between 00:00 and 5:00 (i.e., midnight and 5:00 AM). Garg Decl. at ¶¶ 14-15.[5] This excluded any AM Shifts where an employee clocked-out at 5:00 AM, which a defense witness testified was an erroneous clock-out.[6] *Id.*

Although it was not raised as an issue, Plaintiffs have taken the additional step of accounting for other potentially erroneous time clock entries. Without any evidence presented by

---

[5] This adjustment is being made voluntarily in order to present a conservative damages calculation. Perry's was legally obligated to keep and maintain accurate time and attendance records under the FLSA. *See* 29 CFR § 516.2. Thus, there is no basis for Defendants to challenge the accuracy of their own time records.

[6] Plaintiffs AM Shift list already excluded shifts that ended after midnight the following day. For example, if an employee began work at 1:00 pm and continued working past midnight, this was never considered to be an AM Shift because the individual worked all evening when the restaurant was open.

5

Perry's, Plaintiffs have nevertheless assumed for purposes of this submission that any shift that was 0.6 hours (36 minutes) or less was an erroneous time entry, and those AM shifts that were 36 minutes or less have all been removed from Exhibit P-371.[7] Garg Decl. at ¶ 17.

### C. Inclusion of "PM Shifts"

At trial, Plaintiffs had argued that Perry's failed to carry its burden of showing that employees working PM Shifts in the service well job code were customarily and regularly tipped. Although Plaintiffs presented an alternative damages model that was based on these and other "PM Shifts," *see* Ex. P-390, those shifts were never included in Plaintiffs' Exhibit P-371 and the corresponding damages amounts at Exhibit P-375.

To clarify, there were no "PM shifts" included in Plaintiffs Exhibit P-371 nor are they included in the "Filtered Exhibit P-371" that was used for Plaintiffs' final damages calculation. Garg Decl. at ¶ 17. The only shifts included are those beginning before 2:00 PM and ending before 5:00 PM on the same day. *Id.*

### D. "Duplicate" Entries on Exhibit 371 Identifying Unlawful Tip Pool Recipients

In its Findings of Fact and Conclusions of Law, the Court also directed Plaintiffs to address purported "duplicate" shifts showing in Exhibit P-371. As discussed at trial, the fact of a duplicate entry or shift in the AM Shift list does **not** affect the second portion of the analysis when damages are calculated, because due to Perry's weekly tip pool, in any week when there is a single AM shift worked for an ineligible tip pool recipient, Perry's is liable for damages in that

---

[7] This adjustment is also being made voluntarily in order to present a conservative damages calculation. Perry's was legally obligated to keep and maintain accurate time and attendance records under the FLSA. *See* 29 CFR § 516.2. And Perry's never presented any evidence at trial that its time records were inaccurate when they reflected that AM employees worked these shorter shifts.

week at the location in question, regardless of whether there were additional AM shifts that week. *See* Tr. Vol. I at 114:18-115:14.

Therefore, whether a location had five AM shifts or ten AM shifts in a week, the damages are unaffected and remain the same regardless of the number of AM shifts that week. The opt-in Plaintiffs receive the same damages regardless of whether Perry's unlawfully distributed the tip pool funds to a five non-tipped employees, or ten non-tipped employees.

### III. DAMAGES CALCULATION

#### A. Filtering the Damages Included at Exhibit P-375

After Plaintiffs identified all AM Shifts where an AM Employee worked under the tip pool recipient job codes (as set forth in the chart above), the result was a comprehensive list of all weeks in which Perry's committed a tip pool violation by paying ineligible employees from the tip pool. Garg Decl. at ¶ 19.

For example, at trial, Plaintiffs submitted a list of all weeks in which Perry's committed a tip pool violation at Exhibit P-373. Garg Decl. at ¶ 20. Based on the filtering described above, that list violation weeks in Exhibit P-373 has now been reduced and filtered down, due to the removal of all employees working under the bartender job code, as well as the other adjustments described above. Garg Decl. at ¶ 21. The Filtered Exhibit P-373 is submitted herewith, listing all of the AM Shift violation weeks that support Plaintiffs' damages calculation.

At trial, Plaintiffs also admitted into evidence Exhibits P-374 and P-375, which contained the damages calculation for all opt-in Plaintiffs by week, and the total damages (respectively) based solely on the AM shift violation weeks identified in Plaintiffs' Exhibit P-373. Garg Decl. at ¶ 22. Accordingly, Exhibit P-375 has also now been adjusted and updated. Garg Decl. at ¶ 23.

As Plaintiffs' summary witness testified at trial, she combined all Pay Summary data that

had been produced by Perry's for each opt-in Plaintiff into a single spreadsheet. *See* Exhibit P-344 and P-345 (combined pay summary files). The Pay Summary data showed the total hours worked by each opt-in Plaintiff in a given week, the job code that the hours were worked under, the employee's rate of pay, as well as all tips contributed to Perry's weekly tip pool in that week. Garg Decl. at ¶ 24.

For any week in which Plaintiffs have identified a tip pool violation at a location in the Filtered Exhibit P-373, Plaintiffs have calculated the damages owed to the opt-in Plaintiffs working at each such location during the same week. Garg Decl. at ¶ 25.

Plaintiffs calculated the minimum wage damages by multiplying $7.25 by the number of hours worked in either the job code 100 or job code 150 in that week, and then subtracted the amount that the opt-in Plaintiff actually earned in each job code for that week. Garg Decl. at ¶ 26.

Because of the manner in which this calculation was made, if an opt-in plaintiff earned more than $7.25 per hour, no minimum wage damages would have been awarded for that week. In other words, each opt-in was awarded the difference between their wage actually paid and the full statutory minimum wage of $7.25; if the difference was zero because the individual earned more than $7.25 per hour, then no minimum wage damages were awarded. Thus, if Defendants paid a higher hourly wage to servers during part of the pandemic, this was taken into account and does not lead to an inflated damages award. Simply put, an Opt-in Plaintiff was not awarded any minimum wage damages for hours worked as a server (i.e. job codes 100 or 150) when they were paid more than minimum wage. This would include, but is not limited to, times when they were paid more than minimum wage while training (e.g. under 150 job code) or during COVID when they were paid more than minimum wage.

8

Plaintiffs then identified the amount of each opt-in Plaintiffs' tips contributed to the tip pool in the violation weeks, which was derived directly from Perry's Pay Summaries in the column labelled "TSC_tipsharepaid_earnings." Garg Decl. at ¶ 28.

Opt-in Plaintiffs were only awarded damages for the three-year period before they opted-in to this Lawsuit.

### B. Exclusion of Opt-in Plaintiffs who Settled or Withdrew their Claims

Consistent with their post-trial submission on May 12, 2025, Plaintiffs have excluded the following individuals from the damages calculation, all of whom have either previously settled their claims or who have withdrawn from the lawsuit: David Brewer; Jamie Linn; Paul Neuman; Weston Clarke; Spencer DeMoss; Daniel Elizondo; Stephen Hunzelman; Ryan Dickman; Dimitri Sebikali; Sara Sharif; and Scott Newmyer. Plaintiffs are also only seeking damages after June 16, 2020, for opt-in Plaintiff Marisa Tatum who withdrew her claims and was dismissed without prejudice from *Martinez v. Perry's Rest. Ltd.,* Case No.1:21-cv-01053-RP , ECF No. 37 (March 9, 2023).[8] Garg Decl. at ¶ 31.

### C. Shifts with a 5:00 AM "Clock-Out" Time

Defendants speculated in their post-trial filings that Plaintiffs overcounted the servers' hours worked and their minimum wage damages because (according to Defendants), Plaintiffs "credited" servers with all hours worked in a given shift, even when they clocked-out at 5:00 AM. According to Defendants, the 5:00 AM clock-out was erroneous and simply showed that the server forgot to clock-out.

---

[8] Ms. Tatum was dismissed without prejudice from *Martinez* prior to reaching a settlement and then later filed a consent to join this case on June 16, 2023. *See, e.g.* Dkt. 101-9. Therefore, Plaintiffs calculated her three-year statutory period based on the date she joined this case (i.e. June 16, 2023).

Defendants' argument is misplaced and is based on a misunderstanding of how Plaintiffs calculated damages. Plaintiffs did <u>not</u> use the clock-in and clock-out records (otherwise known as the Extended Actual files at Exhibits P-346 to P-358) to calculate damages or to calculate the total hours worked by the opt-in Plaintiffs in a given week. To the contrary, Plaintiffs used the Pay Summary files (i.e., the Plaintiffs' weekly paychecks) for each opt-in Plaintiff to calculate their damages, which show the total number of hours for which Perry's paid each opt-in Plaintiff in a given week. *See* Exhibits P-344 and P-345. Defendants never provided any evidence that the number of hours listed in the employees' paychecks - which Perry's relied upon to calculate the employees' actual weekly pay – was somehow erroneous or overcounted the employees' hours.[9]

### D. Adjusted Damages Calculation

Based on the Court's instructions in its recent Order (Dkt. 277), Plaintiffs respectfully request that total damages enter as follows:

Single Damages:      $10,511,019.46[10]

Liquidated Damages:  $10,511,019.46

TOTAL:               $21,022,038.92

Plaintiffs are also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

### IV. PLAINTIFFS' DAMAGES CALCULATION IS REASONABLE AND CONSERVATIVE

---

[9] Though Perry's never submitted any evidence on this topic, one would anticipate that before running payroll, an employer would manually adjust an employee's time record when he or she forgot to clock-out. Thus, Perry's payroll summaries, which are synonymous with the servers' paychecks, are the most reliable evidence of the total hours worked by the opt-in Plaintiffs, and it was reasonable for Plaintiffs to rely on these records.

[10] The individual awards for each opt-in are contained in the Filtered Exhibit P-375.

### A. Defendants' Calculations Confirmed the Reasonableness of Plaintiffs' Damages Calculation

Defendants also presented testimony from a summary witness at trial who testified about the potential damages in this case. The evidence offered at trial by Perry's confirms that Plaintiffs' damages calculations are accurate and reasonable. Perry's analysis of the potential damages arising from the *non-busser* AM shifts showed a total of $5.5 million in damages with a two-year statute of limitations.[11] Tr., Vol. II, at 191:1-19; 193:14-195:6. Plaintiffs' total damages arising from all non-busser AM shifts was with a three-year statute of limitations was approximately $5.6 million.

Based on their *busser* AM shift list, Perry's chart showed total damages of $5.8 million. *Id.* at 184:25-187:14. Plaintiffs calculated $5.2 million for these same damages, slightly less than Perry's. *Id.* at 187:22-188:3. If the damages arising from AM Busser shifts were limited to those shifts that ended before 4:00 pm, the total damages remain more than $4.2 million in Perry's data. *Id.* at 189:8-11.

### B. There are Countless Shifts in Which Ineligible AM Employees Received Tip Pool Funds that Excluded from Plaintiffs' Analysis

As discussed herein, Plaintiffs' damages calculation in this case is extremely conservative and Plaintiffs have demonstrated their damages with a level of precision that exceeds their burden under the FLSA. The Court found that Perry's employed off-hour employees to perform such tasks as cleaning restrooms, sweeping and scrubbing floors, sweeping debris in the parking lot, checking the landscaping and for trash in flower beds, polishing dirty exterior glass around the restaurant, cleaning, sweeping, and setting the patio, polishing silverware, restocking, and

---

[11] This analysis included damages based on AM bartender shifts, which are now being excluded; however, Defendants' analysis also significantly undercounted the damages by only using a two-year statute of limitations for damages arising from the non-busser AM shift list.

preparing kitchen items when the restaurant was closed. *See* Dkt. 227 at 6-7. These tasks had to be performed each day before opening and these tasks were performed by employees clocked-in as bussers, server assistants, food runners, and hosts, and thus they were paid from the servers' tips when they performed these tasks.

In many FLSA cases in which plaintiffs challenge the legality of an employer's tip pool, these facts would be sufficient to support a holding that the employer had failed to carry its burden to demonstrate that it only distributed tips to customarily and regularly tipped employees in all of the relevant workweeks.

Nevertheless, Plaintiffs have taken the additional step in this case of closely analyzing and summarizing Defendants' time records to identify thousands of instances when Perry's was paying its employees from the tip pool when they were working their <u>entire shifts</u> exclusively when the restaurant was closed. Plaintiffs are then seeking damages only in those weeks. By using this level of precision, Plaintiffs are significantly undercounting their damages and their final damages calculation is very conservative.

For example, there are hundreds of examples of AM bussers and other AM employees who began their shifts before noon and worked slightly past 5:00 pm. Several examples of these types of shifts are listed below:

- Austin Host shift from 11:20 am to 5:03 pm on Monday, May 24, 2021:

| 05/24/2021 | AM | Host | Host | -1 | Angela Banfield | 11:15 - 16:00 | 11:20 - 17:03 | 4.75 | 5.72 |

- Champions Busser shift from 10:49 am to 5:36 pm on Thursday, June 29, 2023:

| 06/29/2023 | AM | Busser | Busser | -1 | Sandra Nava | 10:00 - 15:00 | 10:49 - 17:36 | 5 | 6.78 |

- Domain Busser shift from 10:09 am to 5:02 pm on Thursday, July 14, 2022:

| 07/14/2022 | PM | Busser | Busser | -1 | Ines Hernandez | 16:00 - 17:00 | 10:09 - 17:02 | 1 | 6.88 |

Because Plaintiffs used a strict 5:00 pm cutoff for AM shifts, none of these shifts above are counted as violations in Plaintiffs' analysis, despite that the AM employees were working four or five hours cleaning and preparing the closed restaurant and received the servers tips for all of their time worked during these shifts.

Moreover, there was evidence at trial that bussers, hosts, and server assistants were often scheduled to work a "double shift," such that they were scheduled for an AM shift (e.g., 10:00-16:00), followed immediately by a PM shift (e.g., 16:00 to 22:00). It was clear from Perry's time records that often the employees did not clock-out between shifts, and therefore these shifts are not shown in Plaintiffs' AM shift list (Exhibit P-371) because they have an actual clock-out time after 5:00 pm. However, there can be no doubt that these employees worked entire shifts -- often four hours or more – in a closed restaurant, and were paid from the tip pool for all of that time. Examples of these double shifts are found in Perry's records and admitted in Exhibit P-377. Some examples are as follows:

| Scheduled Date | Day of the week | Shift Name | Schedule | Job Code | Employee Name | Scheduled Time | Actual Time | Location |
|---|---|---|---|---|---|---|---|---|
| 4/29/2019 | Monday | AM | Host | Host | Madison Post | 10:00 - 16:00 | 09:54 - 19:58 | Austin |
| 11/2/2020 | Monday | AM | Server Assistant | SA | Telesforo Sanchez | 13:45 - 16:00 | 13:50 - 21:51 | River Oaks |
| 3/8/2022 | Tuesday | AM | Server Assistant | SA | Ruel Bravo | 10:00 - 16:00 | 10:00 - 22:49 | Park District |
| 3/16/2022 | Wednesday | AM | Server Assistant | XXX Busser | Ruben De La Cruz | 11:15 - 16:00 | 11:11 - 20:44 | San Antonio |
| 3/25/2023 | Saturday | AM | Host | XXX Host | Hannah Jackson | 10:00 - 14:00 | 09:58 - 20:48 | Grapevine |
| 6/15/2023 | Thursday | AM | Server Assistant | Busser | Uciel Valdez | 10:00 - 16:00 | 10:00 - 20:58 | Grapevine |
| 6/24/2023 | Saturday | AM | Busser | Busser | Kristian Quintero | 11:00 - 15:00 | 11:43 - 23:16 | Champions |

Plaintiffs identified thousands of these "double shifts" in Exhibit P-377. Based on the Court's Findings and Conclusions of Law, Perry's likely violated the FLSA when it paid these individuals from the servers' tips as well; nevertheless, Plaintiffs have not included these "double

13

shifts" as violations in their damages analysis in order to apply the straightforward AM Shift criteria with a strict 5:00 pm cutoff. Had Plaintiffs continued to rely on the "double shifts" to establish a weekly FLSA violation, it would have amounted to a damages award approximately $1.7 million greater than what is being requested in this case.

## V.    CONCLUSION

Based on the Court's instructions in its recent Order (Dkt. 277), Plaintiffs respectfully request that total damages enter as follows:

Single Damages:      $10,511,019.46[12]

Liquidated Damages: $10,511,019.46

TOTAL:               $21,022,038.92

Plaintiffs are also entitled to Post-judgment interest pursuant to 28 U.S.C. § 1961.

Plaintiffs ask that the Court enter judgment in Plaintiffs favor in the amount of $21,022,038.92 plus pre-judgment interest, and that Plaintiffs be given thirty (30) days to submit a motion for attorney's fees pursuant to 29 U.S. Code § 216(b).

Respectfully submitted,

By: /s/ Matthew Thomson

    Drew N. Herrmann
    Texas Bar No. 24086523
    drew@herrmannlaw.com
    Pamela G. Herrmann
    Texas Bar No. 24104030
    pamela@herrmannlaw.com

---

[12] The individual awards for each opt-in are contained in Filtered Exhibit P-375.

14

                **HERRMANN LAW, PLLC**
                801 Cherry St., Suite 2365
                Fort Worth, TX 76102
                Phone: 817-479-9229
                Fax: 817-840-5102

            -AND-

                Harold Lichten, *pro hac vice*
                hlichten@llrlaw.com
                Matthew Thomson, *pro hac vice*
                mthomson@llrlaw.com

                **LICHTEN & LISS-RIORDAN, P.C.**
                729 Boylston St., Suite 2000
                Boston, MA 02116
                Phone: (617) 994-5800

                ATTORNEYS FOR PLAINTIFFS


<u>CERTIFICATE OF SERVICE</u>

    I certify that on December 2, 2025, the above document will be filed via CM/ECF, which will cause a copy to be served on all counsel of record.

                */s/ Matthew Thomson*
                Matthew Thomson