IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BEVERLY CURTIN, *as the proposed representative* §
*of the estate of Candice Paschal*, and PEDRO §
ZARAZUA, JR., *individually and on behalf of* §
*all others similarly situated*, §
　　　　 §
　　　　 §
　　　Plaintiffs, §
　　　　 §
　　　　 §
v. § 　　1:22-CV-27-RP
　　　　 §
　　　　 §
PERRY'S RESTAURANTS LTD *d/b/a* §
PERRY'S STEAKHOUSE AND GRILLE, §
and CHRISTOPHER V. PERRY, *individually*, §
　　　　 §
　　　　 §
　　　Defendants. §

## **ORDER**

Before the Court is Plaintiffs Beverly Curtin, as the proposed representative of the estate of Candice Paschal, and Pedro Zarazua, Jr.'s, individually and on behalf of all others similarly situated, ("Plaintiffs") Motion to Enter Damages Calculation, (Dkt. 229), Defendants Perry's Restaurants LTD doing business as Perry's Steakhouse and Grille and Christopher V. Perry's, individually, ("Defendants" or "Perry's") response, (Dkt. 236), and Plaintiffs' reply, (Dkt. 238). Also before the Court is Defendants' Motion for Leave to File Sur-Reply, (Dkt. 242), and Plaintiffs' response in opposition, (Dkt. 243).

From March 31 through April 1, 2025, the Court held a bench trial in this matter. (Dkts. 209, 210). After considering the evidence and testimony presented at trial, the arguments of counsel, the briefing, and the governing law, the Court entered findings of fact and conclusions of law in favor of Plaintiffs on November 10, 2025, and ordered that Plaintiffs enter damages calculations in accordance with the Court's findings. (Order, Dkt. 227). The background and evidence in this case are presented in that Order, (Dkt. 227, at 2−12), and the parties are familiar with them, so the Court will not recount them here.

1

In its Order, this Court found that because Perry's operated a tip pool on a weekly basis, Plaintiffs were entitled to recover damages on a weekly basis. (Order, Dkt. 227, at 32). The Court also gave the parties the opportunity to correct the damages calculations proposed during trial before it would award a final damages judgment. (*Id.*). The Court instructed that Plaintiffs (1) omit from their damages calculations shifts worked by Bartenders; (2) omit "PM employees" who worked when the restaurant was open (as defined in the Court's Order, (Dkt 227, at 6)); (3) omit weeks, such as during the COVID-19 pandemic, during which Plaintiffs received the full minimum wage instead of the $2.13 subminimum wage; and (4) address any duplicate counting of individual employees, erroneous inclusion of Opt-In Plaintiffs who have settled or dismissed their claims, or damages based on shifts where an employee erroneously clocked out long after the restaurant was already closed. (*Id.*). The Court also explained that it would not use the damages calculation briefing to reconsider its findings of fact and conclusions of law. (*Id.* at 33). Finally, the Court's Order instructed the parties to correct the damages calculations proposed during trial; the Court did not invite the parties to introduce new theories. (*Id.*).

The Court finds that Plaintiffs have calculated damages in compliance with its Order. Plaintiffs submit for this Court's review a filtered copy of Exhibit P-371, which excludes AM shifts worked on holidays or Fridays, when the restaurant is open for lunch. (Mot., Dkt. 229, at 4). In Plaintiffs' filtered calculations, Plaintiffs further removed damages calculations for Bartenders. (*Id.* at 5). Plaintiffs also adjusted Exhibit P-371 to omit any shifts occurring between midnight and 5:00 a.m., as well as those that ended after midnight. (*Id.*). Plaintiffs took the additional step of omitting shifts that were less than .6 hours, to further avoid erroneous entries. (*Id.* at 6). So too, Plaintiffs only included "AM shifts," which Plaintiff defined (more conservatively than the Court) as those that began before 2:00 p.m. and ended before 5:00 p.m. on the same day, from P-371. (*Id.*). The duplicate entries do not impact the damages calculation because, as the Court found, Plaintiffs are entitled to

recover damages calculated on a per-week basis from the weekly tip pool. (Order, Dkt. 227, at 32). As to the COVID-19 pandemic, Plaintiffs' damages calculation omits tip pool liability for any weeks where servers earned more than $7.25 per hour, including weeks during the COVID-19 pandemic or weeks during training. (Mot., Dkt. 229, at 8). Plaintiffs also omitted relevant periods for opt-in plaintiffs who settled. (*Id.* at 9).

Defendants raise several objections to Plaintiffs' damages calculations, which this Court will overrule. First, Defendants re-argue their position that the Court should not calculate damages on a per-week basis, but rather "distinguish tip pool contributions to eligible employees during the relevant time period." (Resp., Dkt. 236, at 9). However, the Court has already ruled on this point and found that it will calculate damages by awarding what Plaintiffs contributed to the tip pool on weeks in which it was unlawful due to the inclusion of ineligible employees. (Order, Dkt. 227, at 32). As the Fifth Circuit has recognized, in a Fair Labor Standards Act ("FLSA") tip pool case, where a coffeeman was alleged to have been unlawfully included in the tip pool, the "narrow issue is whether the coffeeman was an employee who customarily and regularly received tips." *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015) (internal citations omitted). If not, the defendant restaurant "violated the FLSA" because "[i]f an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit." *Id.* And, "[w]here a tipped employee is required to contribute to a tip pool that includes employees who do not customarily and regularly receive tips, the employee is owed all tips he or she contributed to the pool and the full $7.25 minimum wage." *Id.* at 189 n. 6 (quoting U.S. Dep't of Labor, Wage and Hour Div., Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. July 2013)). *See also Camara v. Mastro's Rest. LLC*, 340 F. Supp. 3d 46, 60 (D.D.C. 2018) (stating that where an employer operated an unlawful tip pool the "damages would be equal to difference between base wage and minimum wage plus amount of tips plaintiff contributed to

3

unlawful tip pool.") (citing *Montano*, 800 F.3d at 189, n.6); *Lockett v. Pinnacle Ent., Inc.*, No. 19-00358-CV-W-GAF, 2021 WL 960424, at *5 (W.D. Mo. Mar. 12, 2021) ("If a tip pooling arrangement violates the FLSA's requirements, the employer is ineligible to claim the tip credit, is liable for the difference between its tipped employees' sub-minimum direct cash wage ($2.13) and the federal minimum wage ($7.25), and must reimburse all improperly retained/distributed tips.") (citing *Montano*, 800 F.3d at 189).

By contrast, *Montano* and the text of the FLSA do not invite the Court to find that only *some* contributions to an unlawful tip pool were unlawful because some employees in the tip pool *did* have regular customer interaction, nor have Defendants cited authority for that understanding of FLSA liability.[1] The Court declines to revise its holding that it will calculate damages consisting of tip pool contributions and the difference between the subminimum and full minimum wage, on a per-week basis. (Order, Dkt. 227, at 6).

Second, Defendants request that the Court reduce damages by about four percent to account for a period in which they used a biweekly rather than weekly payroll. To support this assertion, Defendants offer new testimony in the form of a declaration by their witness Shane Grahn. (Resp., Dkt. 236, at 10 (citing Grahn Decl., Dkt. 236-1, dated December 23, 2025)). The Court has already held a trial in this matter and reviewed extensive briefing from the parties after

---

[1] For support, Defendants cite the Court's statement in its Order that shifts including PM employees must be revised from the damages calculation. (Resp., Dkt. 236, at 9 (quoting Order, Dkt. 227, at 32)). By that statement, the Court communicated that a week of a tip pool could not be rendered unlawful by a shift worked by a PM employee. That is consistent with the Court's holding that Plaintiffs were entitled to recover damages from weeks where the inclusion of AM employees, working when the restaurant was closed without more than minimal customer interaction, rendered the tip pool unlawful. The Court also analyzed which categories of employees were and were not customarily and regularly interacting with customers, (Order, Dkt. 227, at 19–20), to identify which weeks had an unlawful tip pool due to the presence of ineligible employees receiving tip pool distributions. This statement is also consistent with this Court's discussion of FLSA remedies stating that when the operation of a tip pool violates the FLSA, the employer must "reimburse all improperly retained/distributed tips." (Order, Dkt. 227, at 31 (quoting *Lockett*, 2021 WL 960424, at *5). In other words, when an ineligible employee is included in the tip pool, that tip pool is rendered unlawful, and the contributions to the tip pool must be reimbursed. *Montano,* 800 F.3d at 189.

trial. During trial, and in their post-trial findings of fact and conclusions of law, Defendants did not raise this issue, even though Plaintiffs disclosed their method for performing the biweekly pay period calculations. *See* Tr. Vol. I at 139:25–140:11 (Plaintiffs' witness testifying that "[I]f I found an a.m. or double shift and I don't know the single weeks of the biweekly period, then I've included the minimum wage amount [] to the server and the total tip contributed by the server towards the tip pool for the entire biweekly period.").

This round of damages briefing was offered for the parties to correct a discrete set of issues that the Court identified based on the admitted evidence at trial. As such, the Court declines to consider new damages theories offered nine months after trial was complete. Plaintiffs did not have the opportunity to cross-examine Grahn about new models for calculating damages arising from biweekly pay periods—even though this was a known issue at trial—and the Court does not have the benefit of admitted record evidence about this point. By offering this theory only at the damages stage, Defendants would prevent the Court from identifying the most appropriate way to account for the biweekly pay periods, so the Court declines to credit Defendants' new damages theory.

Even though the fact of a biweekly pay period used occasionally might render the damages calculation approximate, rather than exact, as to a minority of weeks in which Perry's deviated from its typical weekly pay-period, FLSA regulations contemplate that employers (not Plaintiffs) are required to maintain tip pool records. *See* 29 CFR § 516.2.[2] Here, Plaintiffs' submission as to the biweekly pay periods reflects an "approximated number" of appropriate damages, which is appropriate to account for gaps in the employer's time-keeping records. *See United States Dep't of*

---

[2] So too, it is Perry's burden to demonstrate entitlement to the tip credit during these pay periods. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196−97 (1974); *see also E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48 (2025). Courts "construe the FLSA liberally in favor of employees." *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 424 (5th Cir. 2006) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

*Labor v. Five Star Automatic Fire Prot., LLC*, 987 F.3d 436, 445−46 (5th Cir. 2021) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)).[3]

The Court turns briefly to Defendants' remaining points contesting the accuracy of Plaintiffs' submissions. The Court held that Service Well employees who "began and ended their shifts before 5:00 pm" were not customarily and regularly tipped because "customers were generally not present in the restaurant" for those shifts. (Order, Dkt. 227, at 9). Defendants argue that Plaintiffs improperly used the "SvcWELLBOH" (i.e., back of house Service Well) job code to include a week in the tip pool when one employee worked an AM shift (between noon and 3:43 pm) in Austin and was included in the tip pool. (Resp., Dkt. 236, at 6; Grahn Decl., Dkt. 236-1, at 5−6). Defendants are correct that the Court addressed the back-of-house Service Well position in a footnote, (Order, Dkt. 227, at 20 n. 2), but in that footnote, the Court described that the evidence suggested back-of-house employees working in a separate space made minimum wage rather than being paid via the tip pool. By contrast, the Court did not hold that an employee without customary and regular customer interaction working when the restaurant was closed could be included in the tip pool. (*See* Order, Dkt. 227, at 9). Here, the Court's review of the damages calculations shows that in this instance, a Service Well employee worked their entire shift before the restaurant opened *and* was included in the tip pool, meaning that consistent with its Order, the back-of-house Service Well in this case caused the tip pool in that week to be unlawful. Grahn does not identify other examples of an invalid job code improperly being used to create a work week with a violation. (Grahn Dec., Dkt. 236-1, at 6).

---

[3] Defendants' response on this point is to reargue that Plaintiffs should only recover a proportion of tips contributed to the unlawful tip pool calculated based on the number of AM employees vs. other employees receiving distributions, (Defs.' Sur-reply, Dkt. 242-1, at 2−3), but the Court has already rejected this argument in its Order, (Dkt. 227, at 32), and again above.

Further, contrary to Defendants' objections, (Resp., Dkt. 236, at 6; Grahn Decl, Dkt. 236-1, at 6), it was appropriate for Plaintiffs to include dates in their damages spreadsheets for pay periods that overlap with the start of the three-year opt-in period. "A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271, *opinion modified on unrelated grounds after reh'g*, 826 F.2d 2 (5th Cir. 1987). Because the payday occurred during the opt-in period, the income in that paycheck gives rise to Plaintiffs' claim as to those days. As such, Plaintiffs' inclusion of them is not in error.

Finally, Defendants re-urge their objection that Plaintiffs' summary witness, Muskan Garg, testified as an expert witness. (Resp., Dkt. 236, at 12). The Court has already addressed this issue and permitted Garg to testify as a summary witness pursuant to Federal Rule of Evidence 1006 and allowed Defendants to call Shane Grahn as a summary witness of their own. (*See* Text order dated March 31, 2025). Neither Garg nor Grahn offered impermissible expert testimony at trial; rather, they tabulated, summarized, and presented spreadsheets to perform damages calculations. *See, e.g.*, *United States v. Armstrong*, 619 F.3d 380, 385 (5th Cir. 2010) (Fifth Circuit allows use of summary witness testimony in complex cases). Indeed, both parties' use of summary witness testimony at trial was useful to the Court in this complex, fact-intensive matter, as Plaintiffs obtaining damages after a favorable judgment in this case required summarizing a voluminous amount of payroll data.

### IV. CONCLUSION

The Court finds that Plaintiffs have submitted a proposed damages calculation in accordance with its findings of fact and conclusions of law. While the Court agrees with Plaintiffs that Defendants' proposed sur-reply, (Dkt. 242-1), re-argues issues about the calculation of damages that the Court has already decided, (Order, Dkt. 227, at 32), the Court will allow the filing of Defendants' sur-reply for Defendants to respond to Plaintiffs' arguments that their damages model was not

offered at trial. A final judgment adopting Plaintiff's proposed damages calculation will be entered separately.

**IT IS ORDERED** that Defendants' Motion for Leave to File Sur-Reply, (Dkt. 242), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Enter Damages Calculation, (Dkt. 229), is **GRANTED**.

**SIGNED** on March 24, 2026.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

8